S. H. FIELDS, GARNISHEE, AND J. T. SCOTT v. AMANDA M. RUST
AND J. M. RUST.

Decided June 11, 1904.

**Bankruptcy—Discharge Held Not a Bar—Debt Not Properly Scheduled.**

Plaintiff, then Mrs. Amanda M. Douglass, obtained a judgment against one S., who, after she had by subseuent marriage become Mrs. Rust, obtained a discharge in bankruptcy. In the schedule of debts filed by S. the holder of the debt of plaintiff was named as "Mrs. Amanda M. Douglass," and her postoffice stated to be unknown, while the evidence in this case tends to show that by the use of reasonable diligence S. could readily have learned the true name and residence of plaintiff. Held, that under section 17, paragraph 3, of the Bankrupt Act of 1898 (U. S. Compiled Stats., 1901, p. 3428) providing that a judgment of discharge under the act does not apply to such debts of the bankrupt as "have not been duly scheduled in time for proof of allowance, with the name of the creditor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy," the judgment of discharge did not operate as a bar to the debt of plaintiff, who was without actual notice of the bankruptcy proceedings.

Appeal from the County Court of Wilbarger. Tried below before ᵀon. J. A. Nabers.

*F. P. McGhee* and *Tolbert & Berry,* for appellants.

*Hall & Stokes,* for appellees.

CONNER, CHIEF JUSTICE.—This is an appeal from a judgment of the County Court of Wilbarger County in appellees' favor, in a garnishment proceeding instituted by them in a justice court of that county, wherein it is alleged that the garnishee, S. H. Fields, held certain moneys belonging to appellant J. T. Scott, and which appellees thus sought to have applied in payment of a judgment owned by appellee Amanda M. Rust against said J. T. Scott, rendered on the 29th day of November, 1897. It appears that on said date appellee Amanda M. Rust, who was then named Amanda M. Douglass, secured a judgment against J. T. Scott and others for the sum of $139.10, with costs; that this judgment has never been paid; that on the 9th day of December, 1899, said' Scott filed a voluntary petition in bankruptcy in the District Court of the United States for the Northern District of Texas, and was adjudged a bankrupt. The usual published notice to his creditors required by the bankrupt law was given, and on the 5th day of February, 1900, a final judgment of discharge in his favor was entered. Appellee Amanda M. Rust, however, had no actual knowledge or notice of any of the proceedings in bankruptcy until after the institution of this suit.

After the rendition of the judgment in favor of Amanda M. Douglass, and prior to said 9th day of December, 1899, when J. T. Scott was adjudged a bankrupt, to wit, in October, 1898, she intermarried with the appellee J. M. Rust and removed to the State of Tennessee, where she

has since resided. In the bankrupt proceedings J. T. Scott filed sched-
ules of his indebtedness, of which three copies were offered in evidence
herein. In the first two of such copies the judgment in question is
scheduled as follows, to wit: Under the heading, "Names of holders
so far as known," "Mrs. Amanda Douglas;" under the heading, "Resi-
dence," "P. O. not known. Wichita County;" under the heading, "Na-
ture of liability," etc., "Note given by R. F. Scott and signed by me
and H. J. Stanley as sureties, and now reduced to judgment in J. P.
court in Wilbarger County in about 1897, for about $139.10." In the
other copy of the schedule neither the name nor residence of the holder
is stated, the nature of the liability, however, being stated as in the
other copies mentioned. Upon the service of the writ of garnishment,
S. H. Fields answered that he was indebted to J. T. Scott in the sum
of $197.33, but, referring to the bankrupt proceedings, prayed that
Scott might be cited to appear and be required to answer. Scott ac-
cordingly appeared and pleaded, in bar of the judgment forming the
basis of the garnishment proceedings, the said judgment of discharge
in the Federal court. The result of the trial was a judgment in ap-
pellees' favor for the money in the garnishee's possession, and in his
favor for the sum of $20 as attorney's fee.

A judgment of discharge under the Bankrupt Act of July 1, 1898,
by the very terms of the law itself, does not apply to or bar such debts
of the bankrupt as "have not been duly scheduled in time for proof of
allowance, with the name of the creditor, if known to the bankrupt,
unless such creditor had notice or actual knowledge of the proceedings
in bankruptcy." See sec. 17, par. 3, Act of July 1, 1898, U. S. Com-
piled Stats., 1901, p. 3428. No such exception is to be found in the
preceding Bankrupt Act of 1867. See sec. 33, Bankrupt Act of 1867,
as quoted in Brandenburg on Bankruptcy, p. 150. The only excep-
tions under the Act of 1867 were "debts created by the fraud or em-
bezzlement of the bankrupt, or by his defalcation as a public officer,
or while acting in any fiduciary character." Hence it has been held
in many cases under the Bankrupt Act of 1867 that provable debts not
falling within the exceptions named therein were conclusively barred,
on collateral attack, by a judgment discharging the bankrupt, even
though such debt may not have been included in the schedules of the
bankrupt's debts, and even though the creditor may have been without
notice of the proceedings. See Brown v. Causey, 56 Texas, 340; Blum
v. Ricks, 39 Texas, 123; Alston v. Robinett, 37 Texas, 56; Black v.
Blazo, 117 Mass., 17. It has also been frequently held that debts found
to be within the exceptions named in the Act of 1867 were not barred
by the judgment discharging the bankrupt. See authorities in note
to section 33, cited supra, in Brandenburg on Bankruptcy. We hence
conclude that the line of authorities first above cited has no applica-
tion to the Bankrupt Act of July 1, 1898, now in force and in force
at the time of the proceedings in question. It further follows, we
think, that proof of the exception quoted from the Act of 1898 is not

in the nature of an attack, collateral or otherwise, on the judgment of discharge. Such proof, if made, in no way impugns the regularity of the bankrupt proceedings or the force or validity of a judgment therein as to all debts to which under the law it applies, but establishes merely that the debt shown to be within the exception is not, and never was, intended as one from which the debtor was to be released by the final judgment of discharge. And such is the effect of the ruling of the Supreme Court of California in the case of Santa Rosa Bank v. White, 73 Pac. Rep., 577. This being true, under the several schedules in evidence, we are not prepared to find that appellees' debt was "duly * * * scheduled *with the name of the creditor."*

As shown in evidence the nature of the liability of the bankrupt J. T. Scott to the appellee was given, but under the head of "Names of holders so far as known," the name of the holder or owner of the debt forming the basis of the garnishment suit involved was, under the construction most favorable to appellant, given as "Mrs. Amanda Douglass." The schedules state that her postoffice is not known, but her residence is given as in Wichita County, and there is no intimation that the owner or holder of the judgment scheduled was other than Mrs. Amanda Douglass, or was unknown to the petitioner in bankruptcy. The case of Freeman v. Hawkins, 77 Texas, 498, was one where a judgment against Mary E. Robinson removing cloud upon the title to a certain tract of land was pleaded in bar to the suit of Mary E. Freeman to recover the same tract of land. It appeared that at the time the right of Mary E. Freeman had been acquired, her name was Mary E. Robinson, but that afterwards and before the institution of the suit she was intermarried with D. C. Freeman. The service was upon Mary E. Robinson and by publication only. Our Supreme Court held that, "On the marriage of Mary E. Robinson the law conferred on her the surname of her husband," citing Bishop on Marriage and Divorce, p. 704, and that inasmuch as the citation at the time of its publication did not contain the true name of the adverse claimant, Mary E. Freeman, the judgment removing the cloud was void as to her.

We see no reason why the principle there applied should not be given effect in this case. The judgment of the justice court is conclusive that J. T. Scott, the bankrupt, then was indebted as therein adjudged. It is undisputed that such debt has never been paid or discharged in fact, and it certainly can not be unreasonable to hold that if the bankrupt, J. T. Scott, desired to be relieved from its payment by force of the judgment of discharge in bankruptcy, he should bring himself strictly within its terms. In other words, we think the burden was upon him to show not only that appellees' debt was scheduled, but that it contained the true name of the holder or owner, or if not known that he exercised reasonable diligence to ascertain such name. Before her marriage Mrs. Amanda Douglass resided with her son in Wichita County, and we think the evidence tends to show that with reasonable

diligence J. T. Scott could readily have learned the true name and residence of the creditor from whom he now seeks to be relieved. We think we must at least impute to the court's judgment a finding that appellees' debt was not duly scheduled as provided in the quotation we have made from the Bankrupt Law of 1898, and that appellee had no notice or actual knowledge of the proceedings in bankruptcy,—the term "notice" as here used, and as used in the Act of 1898, meaning the same as "actual knowledge." See Bank v. White, supra.

Other assignments are overruled without discussion, and the judgment of the County Court will be affirmed, save that the garnishee will be allowed $10 attorney's fees instead of $20, as allowed by the court, the garnishee in his pleading having prayed for $10 only. This correction of the judgment, however, will not be allowed to affect the usual entry for costs, inasmuch as no question on this point was presented in the court below or here.

*Affirmed.*