### FITZGERALD v. BROWN, SMITH & MARSH BROS.   (No. 3183.)

(Court of Civil Appeals of Texas. Texarkana. April 22, 1926. Rehearing Denied April 29, 1926.)

**1. Fraudulent conveyances ☞61.**

Defendant cannot, while insolvent, give his interest in property to another, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 3967.

**2. Garnishment ☞164—Evidence held to manifest defendant's intention to abandon in favor of his stepmother any interest he had in property, and hence down payment on sale thereof by her in hands of garnishee was not subject to garnishment for defendant's debts.**

Evidence *held* to show that defendant's intention when making deeds to his stepmother's vendees for his interest in her son's property was that she should have his interest in such property and to ratify sale thereof by her, and to perfect in her vendees title thereto, and hence down payment on such property in garnishee's hands did not belong to defendant, and was not subject to garnishment for his debts.

**3. Garnishment ☞26.**

Real property is not subject to garnishment in any one's hands as "effects" of debtor.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Effects.]

**4. Garnishment ☞191—Garnishee's costs on prevailing in garnishment proceedings held limited to sum prayed for (Vernon's Sayles' Ann Civ. St. 1914, art. 307).**

In garnishment proceedings, garnishee on prevailing will be allowed $50 as costs, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 307, notwithstanding that trial court awarded $150, where prayer of garnishee was for former sum.

Appeal from District Court, Smith County; J. R. Warren, Judge.

Suit by Brown, Smith & Marsh Bros. against F. A. Moore, in which J. W. Fitzgerald was made garnishee. Judgment for plaintiffs, and garnishee appeals. Reversed and rendered.

A. P. Moore died prior to 1919. Surviving him he left Rachel J. Moore, his second wife, William Moore and John Moore, their sons, and F. A. Moore and Addison Moore, his sons by his first wife. William Moore died intes-

tate in 1919, owning a one-half interest, undivided, in land and a storehouse thereon, and in land and a dwelling house thereon in the city of Tyler. At the death of William Moore, F. A. Moore, as one of his heirs, became the owner of a one-sixteenth interest, undivided, in said property. In September, 1924, Rachel J. Moore, acting for herself as an heir of William Moore, and for her son John, a minor, as the guardian of his estate, agreed with E. P. McKenna to sell him the business property for $18,000; and about October 10, 1924, so acting, she agreed with Mrs. D. H. Darby to sell her the residence property for $5,000. In conformity to her agreements Mrs. Moore, for herself and as such guardian, executed a deed dated October 30, 1924, conveying the business property to McKenna, and a deed dated November 12, 1924, conveying the residence property to Mrs. Darby. Before said deeds were made, and before McKenna and Mrs. Darby, respectively, had paid Mrs. Moore the consideration agreed upon for the properties, to wit, on October 16, 1924, a writ of attachment issued at the instance of appellees Brown, Smith & Marsh Bros. in a suit they commenced that day against F. A. Moore to recover $2,397 they claimed he owed them, was levied on the interest of said F. A. Moore in both the business and residence property. On the same day (October 16, 1924) F. A. Moore, by a deed reciting a consideration of $10, conveyed the business property to said McKenna, and by another deed reciting a like consideration conveyed the residence property to Mrs. Darby. On November 18, 1924, Mrs. Darby deposited $312.50, being one-sixteenth of the purchase price of the residence property as agreed upon between her and Mrs. Moore, with appellant, J. W. Fitzgerald, described in the check for that sum drawn in his favor as "trustee Mrs. A. P. Moore." The instructions of Mrs. Darby to Fitzgerald were in writing, and were to hold the $312.50 until "the writ of attachment (referred to above) and the attachment lien issued in the above numbered and entitled suit has been satisfied and dismissed or discharged, when said sum of money shall be paid to the said Rachel J. Moore. But, in the event said writ of attachment and attachment lien shall not have been satisfied, dismissed, or discharged prior to the adjournment of the spring term, 1925, of the district court of Smith county, Tex., then said sum of money shall be returned by the said J. W. Fitzgerald to the undersigned Mrs. D. H. Darby."

On the same day, to wit, said November 18, 1924, McKenna deposited $1,125, being one-sixteenth of the purchase price of the business property as agreed upon between him and Mrs. Moore, with appellant, Fitzgerald, described in the check for that sum drawn in his favor as "trustee Mrs. A. P. Moore." The

---

instructions of McKenna to Fitzgerald also were in writing, and were like those of Mrs. Darby to said Fitzgerald. By an order made December 12, 1924, the court quashed the attachment proceedings in the suit of appellees against F. A. Moore, but at the same time rendered judgment in appellees' favor against said F. A. Moore for $2,397. "When the attachment was quashed, or within a few minutes thereafter," said the court who tried the instant case, "the attorneys for Mrs. Moore notified J. W. Fitzgerald that the attachment had been quashed and dismissed, and requested that the said money be paid to Mrs. Moore; but he did not forward same to her (in California, where she resided) because she had instructed him to invest her funds for her."

At the time (to wit, December 17, 1924) the writ of garnishment was served on him, appellant, Fitzgerald, still held the sums deposited with him by McKenna and Mrs. Darby. The appeal by Fitzgerald is from a judgment in appellees' favor against him for $1,437.50, the total of the sums deposited with him by McKenna and Mrs. Darby, respectively.

Bulloch & Ramey, of Tyler, for appellant.
Bryan Marsh, of Tyler, for appellees.

WILLSON, C. J. (after stating the facts as above.) We agree with the trial court that the testimony did not show a valid gift to Rachel J. Moore by F. A. Moore of his interest in the real property referred to in the statement above, and therefore overrule the contention of appellant to the contrary.

But we do not agree with said court in his conclusion that an effect of the service of the writ of garnishment was to create a lien in appellees' favor on the money in appellant's hands as trustee, and to entitle appellees to have same applied toward the satisfaction of their judgment against F. A. Moore.

The conclusion was predicated upon testimony showing that, when he was advised of the sale of the property by Mrs. Moore to Mrs. Darby and McKenna, F. A. Moore acquiesced therein, and conveyed his interest in the property to her vendees; on testimony showing that F. A. Moore was insolvent at the time he so conveyed; and on testimony showing that the money deposited by Mrs. Darby and McKenna with appellant as trustee represented the proportionate part, at the price Mrs. Moore sold the property, of F. A. Moore's one-sixteenth undivided interest therein.

[1] As the trial court construed it, the effect of the testimony referred to was to show that F. A. Moore owned the money in appellant's hands as trustee, and undertook, while insolvent, to give it to Mrs. Moore. If the testimony meant that, the conclusion of the trial court in question was not erroneous, for

F. A. Moore could not, while he was insolvent, give his interest in the property to Mrs. Moore or to any one else. Article 3967, Vernon's Sayles' Statutes. So the correctness of the court's conclusion depends upon whether the testimony warranted a finding that the money belonged to F. A. Moore or not.

[2] It appears without dispute in the testimony that F. A. Moore never had anything whatever to do with the negotiations resulting in the contract covering the sale of the property by Mrs. Moore to Mrs. Darby and McKenna. It was after those contracts were made, and at the request of agents of Mrs. Moore, F. A. Moore testified, and, for the purpose of clearing the title to the property in her vendees, he testified further that he executed the deeds conveying his interest in the property to Mrs. Darby and McKenna. He testified further that he never had any understanding or agreement with Mrs. Moore, Mrs. Darby, McKenna, or any one else, that he was to be paid anything for his interest in the property, and that he was never, in fact, paid anything therefor; and, further, that he never had anything to do with, or knew anything about, money being deposited with appellant by Mrs. Darby and McKenna on account of the property until long after the deposits were made. He testified further that, while the title to an interest of one-sixteenth, undivided, in the property passed to him when his brother William died, he never claimed same, but wanted Mrs. Moore to have it; and further, that he never claimed to own or to be entitled to the money, or any part of it, in appellant's hands. The testimony of said F. A. Moore referred to was not contradicted in any material particular by any other testimony before the court, but, instead, was strongly corroborated by such other testimony.

Treating said testimony as true, as we think we should, it not only, as we view it, fails to show that the money in appellant's hands as trustee belonged to F. A. Moore, and was by him given to Mrs. Moore, but it shows that what said F. A. Moore undertook to do when he made the deeds to Mrs. Moore's vendees was not to sell his interest in the property to Mrs. Darby and McKenna and give the proceeds of such sale to Mrs. Moore, but, in conformity to the desire it appeared he had all along entertained that Mrs. Moore should have his interest in the property, to ratify the sale made by her of his said interest and perfect in her vendees the title thereto which she had undertaken to convey to them.

If that was the effect of the testimony, and we think it was, then F. A. Moore never sold or agreed to sell, and never in any effectual way authorized any one else to sell, his interest in the property. If he did not sell, or in an effectual way authorize any one else to sell,

his said interest, then no one owed him anything on account of it. If no one owed him anything on account of the property, then the money in appellant's hands did not belong to him, but belonged either wholly to Mrs. Moore or partly to Mrs. Darby and partly to McKenna. In that view of the case, appellees' remedy was not by garnishment proceedings against appellant to subject the money in his hands to their judgment against F. A. Moore, but was by other proceedings to subject F. A. Moore's interest in the real property to their said judgment.

The conclusion of the trial court to the contrary of the one we have reached was predicated on the ruling of the Supreme Court in Owosso Carriage & Sleigh Co. v. McIntosh & Warren, 179 S. W. 257, 107 Tex. 307, L. R. A. 1916B, 970. In that case it appeared that one Sweet, a merchant, sold his stock of goods to McIntosh & Warren in violation of the "Bulk Sales Law," and that, before the writ of garnishment was served on them, McIntosh & Warren sold the goods to other parties. The sale to McIntosh & Warren being void, the court held that they acquired no title to the goods, and that, having converted the goods by selling same, they held the proceeds of such sale as trustee for Sweet's creditors, and therefore were liable in the garnishment proceedings prosecuted against them by one of said creditors.

[3] A difference between that case and this one lies in the fact that there the property unlawfully sold to McIntosh & Warren was personal property, and therefore subject in their hands to garnishment as "effects" of the defendant Sweet, while here the property unlawfully given to Mrs. Moore was real property, and therefore not subject to garnishment in any one's hands as "effects" of the defendant F. A. Moore. 28 C. J. 189. Had F. A. Moore, intending to give it to her, conveyed his interest in the property to Mrs. Moore instead of her vendees, it could not have been subject to appellees' judgment by garnishment proceedings against her, as could the goods belonging to Sweet in McIntosh & Warren's hands. And, had Mrs. Moore, after such interest was conveyed to her, sold it to Mrs. Darby and McKenna, she would not have been in the attitude of a converter, as McIntosh & Warren were when they sold the goods belonging to Sweet, for real property is not subject to conversion as personal property is. Berry v. Hindman, 129 S. W. 1181, 61 Tex. Civ. App. 291. Had the property been conveyed to Mrs. Moore as suggested, and had she afterwards sold it, we do not think the proceeds of such sale in her hands would have belonged to F. A. Moore. Unlike Sweet in the case referred to, F. A. Moore never sold his interest in the property he owned to any one, and no one ever owed him anything on account of it. That being true, we are unable to see in the facts of the case how the money in appellant's hands could have belonged to him.

[4] We think the judgment should have been in appellant's favor. It will be reversed, and judgment will be here rendered that appellee take nothing by its suit against appellant, and that appellant recover of appellee his costs in this behalf expended, including $50 as the reasonable compensation he is entitled to on account of appellee's suit against him. Article 307, Vernon's Sayles' Statutes. The trial court found the amount to be $150 instead of $50, but the prayer of the garnishee was for the latter sum. Fields v. Rust, 82 S. W. 331, 36 Tex. Civ. App. 350.