## KELLY v. ROITSCH.    (No. 9155.)

Court of Civil Appeals of Texas. Galveston.
April 26, 1928.

Rehearing Denied May 24, 1928.

1. **Bankruptcy** ⬅425—**Mistaken listing of foreign corporation's state residence in bankruptcy schedule held not to except debt from discharge (Bankr. Act, § 17(3); 11 USCA § 35).**

Mistaken listing of foreign corporation's state residence in bankruptcy schedule as in city where it had its state office when bankrupt had dealings with it, and where he believed, without negligence, that it still had, *held* not such a material noncompliance with Bankruptcy Act (11 USCA) as to except debt to such corporation from discharge, under section 17(3), 11 USCA § 35.

2. **Bankruptcy** ⬅425—**Constitutional law** ⬅309(1)—**Due scheduling of debt imparts sufficient notice of bankruptcy proceedings to creditor and due process does not require further notice (Bankr. Act, § 17a(3); 11 USCA § 35).**

Due scheduling of debt by bankrupt imparts notice of bankruptcy proceedings to creditor, under Bankruptcy Act, § 17a(3), 11 USCA § 35, and makes further notice nonessential to due process.

Appeal from District Court, Galveston County; C. G. Dibrell, Judge.

Action by W. G. Kelly, receiver of the Lion Bonding & Surety Company, against Max Roitsch. Judgment for defendant, and plaintiff appeals. Affirmed.

W. J. Rutledge, Jr., of Dallas, for appellant.

Frank S. Anderson and Fine G. Bedford, both of Galveston, for appellee.

─────────────────────────────────────────

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

GRAVES, J. [1] The main question involved in this cause is whether or not the $2,500 indebtedness of the appellee to the Lion Bonding & Surety Company, whose home office was in Omaha, Neb., evidenced by a promissory note dated August 2, 1916, and matured into a judgment against him February 8, 1921, was shown to have been sufficiently scheduled in a petition in bankruptcy filed by him in the United States District Court at Galveston on February 7, 1921, under which proceeding he was discharged on May 17, 1921, from all debts made provable against his estate by the Bankrutcy Act (11 USCA).

The undisputed facts show that the only respect in which there was a departure from the express requirements of the Bankruptcy Act was that the residence of the bonding company was mistakenly listed in the schedule as being "Waco, Texas," when, in fact, its Texas office at that time was in Dallas, Tex.; its home office having at all times continued to be in Omaha.

Appellant, as its official representative, contends that this was such a material noncompliance as to make the attempted scheduling of its debt not effective against the company, and that, no actual notice or knowledge of the bankruptcy proceeding having been brought home to it, it was not bound thereby, and the debt is still outstanding. The trial court held to the contrary, and the appeal challenges that action. The judgment has been affirmed.

As indicated, the facts already stated were undisputed. In addition, the trial court stated findings to the effect (1) that the bonding company had in fact maintained its state agency at Waco prior to about 1918, when it was moved to, and thereafter kept exclusively at, Dallas; (2) that appellee, prior to 1916, did business with the company, had had correspondence with its state agency at Waco, never at any time knew of the location either of its home office at Omaha, Neb., or of any other office than the one at Waco, and, in so listing its claim when filing his schedules in bankruptcy believed Waco, Tex., was its address, not knowing of the removal to Dallas; (3) that there was no evidence, either that the company did not receive notice or acquire actual knowledge of the bankruptcy proceeding; (4) that Theo. F. Hiegel, who had actual knowledge both in advance of appellee's intention to file his petition in bankruptcy and immediately afterward that he had filed it, was from 1912 on the bonding company's local agent at Galveston, the nature of his agency being that he would solicit bonds and other insurance contracts in its behalf, but was required to submit all such proposed business to its state agent for disposition; that, where the latter accepted the business, he would instruct Hiegel, who received a stipulated commission out of the premiums collected on the business he procured, to bind the company. The only one of all the fact findings attacked is that Hiegel had actual knowledge of the filing of the petition in bankruptcy, as to which it is said there is no supporting evidence.

The applicable provision of the Bankruptcy Act, c. 3, § 17, is:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as * * * (3) have not been duly scheduled in time for proof and allowance, with the name of the creditor if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy." 11 USCA § 35.

Applying this statute to the facts uncontroverted here, we are unable to distinguish the case thereby made from that of Steele v. Thalheimer, 74 Ark. 516, 86 S. W. 305, where the Supreme Court of Arkansas said:

"Now, the act does not except debts belonging to creditors whose post office address has not been correctly stated in the schedule. It excepts only those which have not been 'duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt.' Now, this debt was scheduled with the name of the creditor. His address was not correctly given, but the act does not make the discharge of no effect for such a failure. Besides, it is not alleged or shown that the bankrupt knew the address of the creditor, or that the failure to give his correct address was intentional or fraudulent."

Indeed, aside from being precisely the same as here, in that the address of the creditor was not correctly given, the facts tending toward compliance with the quoted provision of the Bankruptcy Act were not so strong in the Thalheimer Case as in this. After reciting that the creditor, Steele, had been scheduled as being a resident of Little Rock, the court further finds affirmatively:

"Steele did not live in Little Rock, but at or near Clinton, Ark., and he had no notice of any kind that the petition in bankruptcy had been filed, or that the discharge had been granted until more than two years after the date of the order of discharge."

Here, in a contrast somewhat at least favorable to this case, the findings, which we are unable to say lacked support in the evidence, reflect not only that this creditor did have its state office at Waco during the time appellee had his dealings with it, but that he believed it still did when he later came to so recite in his bankruptcy schedule; hence that mistake was neither intentional nor fraudulent. There is, too, testimony in the record justifying the further conclusion that it was not the result of negligence upon his part. He testified that, about a month or six weeks before filing his petition, having dealt with and known the company only as the

Lion Bonding & Surety Company of Waco, Tex., and never having known nor heard of any change in its address, not wanting to go into bankruptcy, he went to Waco to see them with the objective of making some adjustment of their debt by which he might continue in business and pay it; that, on arriving there, he inquired of a lumber company he knew there for the Lion Bonding & Surety Company's office, was given a local street address as being the right place, went there, and found a nice office in charge of a Mr. Wyatt, or a man of some such name, and, on asking, was told by him that was the Lion Bonding & Surety Company's office; that, after discussing the matter with Mr. Wyatt, he was told the company could do nothing for him.

It is not thought that the authorities cited by appellant announce a different rule from that here applied upon the equivalent of the same state of facts. For instance, in Fields v. Rust, 36 Tex. Civ. App. 350, 82 S. W. 331, the bankrupt, in scheduling the debt, failed to give the correct name of the creditor, which is specially required by the act, and there was no evidence that he did not know who owned it; while in Caldwell v. Eastman, 3 Am. B. R. (N. S.) 497, it was admittedly shown that the residence of the creditor was not and never had been at the place named in the bankruptcy schedule. Like or similar distinctions appear to affect most if not all the others.

In a word, it seems to us that, had it been shown here that this creditor never had an office in Waco, or if it once did have and had later moved it to Dallas, either within the appellee's knowledge or in the face of such facts known to him as would have reasonably put a prudent man upon inquiry as to such a change, and he yet erroneously listed it as residing at Waco, a situation ruled by the cases relied upon by appellant would have been presented.

But, as indicated, that is not what this record reflects; there is here no probative suggestion of fraud; on the contrary, an unchallenged and sufficiently supported finding of good faith in making a mere mistake with reference to a detail not expressly made necessary of mention at all by the Bankruptcy Act, when all those it did require were fully supplied.

In the circumstances, we are unable to hold there was such a material failure to meet the spirit and meaning of the Bankruptcy Act as excepted the debt here involved from the discharge granted the appellee, agreeing rather with the learned trial court that it was properly scheduled.

[2] If this conclusion is correct, the question of notice to the creditor of the bankruptcy proceeding is ipso facto foreclosed, as was held by the Commission of Appeals, in State v. Bank, 116 Tex. 219, 288 S. W. at page 437, in this language:

"Because of the in rem characteristic, regularity of the petition and schedules makes further notice to the creditor, whose claim may be discharged, nonessential to due process. Hanover National Bank v. Moyses, 186 U. S. 181, 192, 22 S. Ct. 857, 46 L. Ed. 1113. The fact of a due scheduling of a debt, of itself, imparts to the creditor notice of the existence of the proceedings. Collier, Id. Such is the necessary import of section 17a(3), for, according to its terms, notice or actual knowledge must be otherwise shown only when the debt has not been duly scheduled. If a debt has been duly scheduled, it would require perversion of the statute's language to say that the creditor must have further notice in order to be constructively apprised of the proceedings."

Affirmed.