**UNITED STATES of America, Appellant,**

v.

**J. T. HUBBELL, Individually and d/b/a J. T. Hubbell Construction Co., et al., Appellees.**

**No. 19977.**

United States Court of Appeals Fifth Circuit.

Sept. 24, 1963.

Rehearing Denied Dec. 20, 1963.

Joseph Kovner, Atty., Michael K. Cavanaugh, Dept. of Justice, John B. Jones, Jr., Act. Asst. Atty. Gen., Louis F. Oberdorfer, Asst. Atty. Gen., Meyer Rothwacks, Lee A. Jackson, Attys., Dept. of Justice, Washington, D. C., H. Barefoot Sanders, Jr., U. S. Atty., Martha Joe Stroud, Asst. U. S. Atty., Dallas, Tex., for appellant.

William S. Downard, W. M. Taylor, Jr., Aubrey J. Roberts, R. G. Scurry, Dallas, Tex., Scurry, Scurry, Pace & Wood, Richard H. Hodges, Dallas, Tex., for appellee, Housing Authority of the City of Dallas.

Before CAMERON and BROWN, Circuit Judges, and WHITEHURST, District Judge.

CAMERON, Circuit Judge.

In this "interpleader" action, appellant United States and appellees J. T. Hubbell, T. B. Hubbard Construction Company, Inc., and Russell W. Nix (called "Contractors" for convenience) claim the proceeds of a state court judgment in favor of Contractors and one Lewis, and against "interpleader" The Housing Authority of the City of Dallas. The court below held that the tax lien claim of the United States was inferior to the claim of Contractors.

The controlling facts giving rise to this controversy are not in material dispute. Contractors, operating as joint venturers, contracted with Housing Authority to construct projects in Dallas. Lewis entered into a subcontract with Contractors to do the painting on the projects, the prime contract calling for only one coat of paint. For reasons term-

ed arbitrary in the state court suit, Housing Authority insisted that the one coat applied was not sufficient. Lewis decided that it would be wiser to finish the job and avoid further difficulty, and provided the second coat of paint at no extra cost to either the prime contractor or Housing Authority. As explained *infra*, this extra work was done under what the state court found to be economic coercion on the part of Housing Authority.

As a result of the problems encountered on the Housing Authority jobs, Lewis became insolvent, and one of his unpaid debts consisted of withholding taxes due the government. The resulting tax lien which is the subject of this action arose at this phase of this protracted state-federal court litigation.

Contractors commenced the state court suit against Housing Authority seeking to recover a sum in excess of one million dollars on various claims for extra work and the unpaid portion of the contract price on the projects, including a claim for "extra cost of painting required by defendant but not in contract." Contractors urged Lewis to join them as party plaintiff, inasmuch as it was he who had performed the painting and they feared the defense would be raised that any damages done were payable to Lewis and not to Contractors. Lewis declined to join, being insolvent and unwilling or unable to incur the costs necessary to assist in prosecuting such an action.

On or about October 10, 1955, however, subsequent to the filing of notices of tax liens against Lewis, he and Contractors entered into the following agreement:

"In consideration of the prosecution of our claim versus The Housing Authority of the City of Dallas for work and extra work required by it and performed by us on West Dallas Housing Project TEX-911C and TEX-911D, in the suit which you now have pending against The Housing Authority of the City of Dallas, we hereby assign to you 65% of the net amount recovered by us, it being understood that you are assuming the payment of all expenses, attor-

ney's fees and Court costs and that we will be exempt from payment of any liquidated damages for delay occasioned (sic) by us. We will, of course, cooperate fully in the prosecution and trial of said case, appearing as witnesses and making available such of our records and files as may be necessary.

\* \* \* \* \* \*

"This does not obligate you to prosecute said lawsuit."

The Contractors' petition in the state suit was amended to include Lewis as a claimant. The suit resulted in judgments against Housing Authority on several counts, including a separate judgment on the "painting" count which, with interest, amounted to $60,113.41 in favor of Lewis and Contractors jointly. The Court of Civil Appeals of Texas affirmed the judgment insofar as the "paint" claim was concerned, but reversed and remanded for a new trial as to the balance of the claims, Housing Authority of City of Dallas v. Hubbell, Tex.Civ.App., 1959, 325 S.W.2d 880. The Supreme Court of Texas refused a writ of error, finding no reversible error, 160 Tex. 648. The "paint" claim was upheld as actionable economic coercion:

"Duress is a tort. It often arises in connection with breach of contract, but it is nevertheless a tort, and it is not necessary that there should have been privity of contract between the parties as a prerequisite for such a tort action. One who sustains damage as a result of being subjected to duress may sue as plaintiff against the wrongdoer. 'Economic coercion', the basis of Lewis' cause of action, is generally considered a form of duress.

\* \* \* \* \* \*

"Since the claim of Lewis was grounded on duress, he had a right to sue in a tort action as plaintiff in his own behalf." 325 S.W.2d at 902.

"The judgment in favor of C. Russell Lewis is not grounded on contract. It is grounded on the tort of

'economic coercion'—a form of duress. * * * It is to be remembered that in answering these issues the jury found that the second coat of paint was applied at a reasonable cost to Lewis of $32,963.53 and $18,516, that Owner acted arbitrarily and capriciously in refusing to accept the one coat system of paint work of Lewis, and that Lewis was under duress by Owner at the time he signed the letter agreeing to put on two coats of paint instead of one without charge." 325 S.W.2d at 905–906.

Contractors claimed sixty-five percent of the judgment under the agreement quoted supra; the Government claimed the whole judgment for satisfaction of its larger tax lien against Lewis. The Housing Authority paid the amount of the judgment, plus interest, into the registry of the District Court below and prayed that the court determine to whom the money was due, and award attorney's fees to it as interpleader.

The court below held that the Contractors' claim against the judgment preceded the government's tax lien because Lewis, against whose property the lien attached, "acquired an interest in the suit solely by virtue of the agreement [quoted supra], which defines his proportional interest in any net recovery." We disagree and reverse. Contractors acquired an interest in Lewis' claim by virtue of that agreement, not vice versa. And at that time, the tax lien had already attached to Lewis' claim.

The lien in this case arose under 26 U.S.C.A. § 3670 (I.R.C. 1939):

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon *all property and rights to property, whether real or personal,* belonging to such person." [Emphasis added.]

The controlling question, therefore, is whether Lewis' right of action against Housing Authority amounted to "property" or "rights to property" before he entered into the agreement with Contractors. Appellees argue that Lewis had only a "right to file suit" against the Housing Authority, which may or may not have turned out to be a "right to property." Appellant contends that the right of recovery of Lewis, characterized as a claim sounding in tort by the Texas courts, was a "right to property" to which the lien attached.

■■ State law controls in determining the nature of the legal interest which Lewis owned, but federal law controls the consequences attaching thereto. Aguilino v. United States, 1960, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed. 1365; United States v. Bess, 1958, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135; Morgan v. Commissioner, 1940, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585. Lewis' claim against Housing Authority was a chose in action; the agreement with Contractors was an assignment of a portion of the chose in action; but the tax lien attached when the claim came into being (or as soon thereafter as the tax liens were perfected, such time being indisputably prior to the date of the assignment to Contractors). It must follow, therefore, that whatever rights Contractors took under the assignment were taken subject to the tax lien.

■ Lewis' claim against Housing Authority was not contingent merely because it would take a lawsuit to reduce it to judgment or to collect it. It was, perhaps, uncertain, but not subject to any infirmity which would prevent the attachment of the lien. The real issue in this case, the unprecedented one, is whether the lien attaches to an unliquidated claim sounding in tort. Neither party cites us to a case directly in point, and we have found none. We see no reason, however, why a tort claim is not "property" or "rights to property," just as, e. g., any unliquidated contract claim is so considered.

■ Appellees' last argument, however, is meritorious in part. The record

indicates that Lewis had entered into and performed sub-contracts to do the painting on four projects, two with Contractors and two with another prime contractor. The record further indicates that Lewis applied a second coat of paint on all four jobs. No claim was made by anyone as to the extra work done on the two projects with which we are not here concerned. Lewis testified that he was unable to finance the making of claims against Housing Authority and that the government "pointed out they could not represent me or assist me in any way." It follows that the fund here claimed was created by the efforts of and at the expense of appellees and their attorneys. On oral argument attorneys for the government assured the Court that fees earned by appellees' attorneys "would be taken care of." In order to insure that the efforts and expenses of appellees and their attorneys will be "taken care of," we remand this case to the trial court for a determination of the amount of reimbursement equitably due appellees and their attorneys for creating the fund for the benefit of the government. Sprague v. Ticonic National Bank, 1939, 307 U.S. 161, 166, 59 S.Ct. 777, 779–780, 83 L.Ed. 1184;[1] Voris v. Gulf Tide Stevedores, 5 Cir., 1954, 211 F.2d 549, 551.[2]

■ Finally, there is the question of whether the award of five hundred dollars to the Housing Authority as "interpleader" shall stand. It is questionable whether Housing Authority is, strictly speaking, an interpleader.[3] At any rate, the award of interpleader's attorneys' fees cannot stand against the fund inasmuch as the assignment does not prevail over the tax lien. United States v. Ball Construction Co., 1958, 355 U.S. 587, 78

S.Ct. 442, 2 L.Ed.2d 510. Whether there should be an award against the unsuccessful assignees is initially a question for the trial court, and is a question to be decided on remand.

The judgment of the trial court is, therefore, reversed and the case is remanded for disposition consistent with this opinion.

1. "* * * the usual case [for allowing expenses] is one where through the complainant's efforts a fund is recovered in which others share." Of course, here the government's lien is larger than the fund, and the entire amount of reasonable expenses incurred in creating the fund is to be charged against it.

2. "* * * the age-old equitable principle [is] that one who accomplishes the creation of a fund for the benefit of another

is entitled to reimbursement therefrom for the reasonable costs thereby incurred. The doctrine of salvage is akin to this principle."

3. This action was filed by appellees to compel the Housing Authority to pay its state judgment and to quash a notice of levy filed by the District Director of Internal Revenue. The Housing Authority paid the amount of the judgment into the registry of the District Court.