**Samuel C. SHORT, III,**

v.

**UNITED STATES of America et al.**

No. P–73–CA–14.

United States District Court,
E. D. Texas,
Paris Division.

Jan. 15, 1975.

**1152**

Tom D. Wells, III, Paris, Tex., for plaintiff.

Roby Hadden, U. S. Atty., Eastern Dist. of Tex., Houston Abel, Asst. U. S. Atty., Eastern Dist. of Tex., for Government.

W. M. Holman, pro se.

### MEMORANDUM OPINION AND ORDER

JUSTICE, District Judge.

This civil action, involving federal tax liens,[1] is in the nature of an interpleader. Plaintiff, Short, complains that the controversy between the United States and William M. and Alma Jean Holman leaves him in the position of stakeholder, threatened with law suits by both defendants.

Plaintiff entered into a contract with the Holmans on or about June 1, 1973, for the purchase of equipment for use in an Ozark Fried Chicken outlet. Alma Jean Holman was the major shareholder in Ozark Fried Chicken, Inc., at the time in question. Negotiating with W.

M. Holman (the husband of Alma Jean), Short made a $4,000.00 down payment in the form of a check, dated June 6, 1973, payable to Alma Jean Holman. This check was endorsed by Mrs. Holman and cashed by her. The full purchase price negotiated with the Holmans was $10,000. Short executed a note for the $6,000.00 balance, payable in twelve monthly payments of $500.00 each to W. R. Holman, son of W. M. and Alma Jean Holman. Short testified that W. M. Holman directed that the note be made payable to W. R. Holman, in order to help finance W. R. Holman's college expenses. Although Alma Jean Holman testified that the note was partly in consideration for the work done by W. R. Holman in the family stores while he was growing up, she admitted that the money came as a surprise to him and that it was, in effect, a gift.

By August 23, 1973, the Secretary of the Treasury had made assessments, in the form of 100% penalties, against W. M. Holman, because of the failure of corporations in which he was a responsible officer to pay taxes. (Apparently there were insufficient corporate assets to pay for withholding taxes, which had not been withheld.) On that date, a delegate of the Secretary of the Treasury served a copy of a notice of levy upon plaintiff.[2] This notice informed Short that W. M. Holman owed the United States the sum of $57,290.12, that demand had been made for such amount, and that all property and rights to property belonging to W. M. Holman in Short's possession were thereby levied upon and seized. By this time, Short had made two of the $500.00 payments, and therefore still owed $5,000.00 on the note.

It is the contention of defendants, W. M. Holman and Alma Jean Holman, that

---

1. *See* 28 U.S.C. § 2410, wherein the United States waives its sovereign immunity in such claims.

2. *See* 26 U.S.C. § 6321, pursuant to which liens in favor of the Government are created

from non-payment of taxes. *See also* 26 U. S.C. § 6671 which provides that penalties are to be treated in the same manner as taxes under this title.

the restaurant equipment sold to Short was Alma Jean Holman's separate property, and that the proceeds therefrom cannot be reached to satisfy tax liens of her husband.

The question of whether and to what extent each spouse has property is determined under the applicable state law. *Aquilino* v. *United States*, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); *Morgan* v. *Commissioner of Internal Revenue*, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585 (1940). Once it is determined under state law that the taxpayer owns property or rights to property, federal law is controlling to determine whether a tax lien will attach to such property. *United States* v. *Bess*, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958); *United States* v. *Hubbell*, 323 F.2d 197, 200 (5th Cir. 1963).

The evidence discloses that Alma Jean Holman went into the fried chicken business in 1963, developing a special recipe for cooking fried chicken which she registered under the trade name "Miss Alma's Recipe". Desiring to open franchises under the name "Ozark Fried Chicken", she moved to Little Rock, Arkansas, early in 1965. There she incorporated her business as Ozark Fried Chicken, Inc., the only corporate asset being $1,000.00 in a bank account.

In December of 1965, the Holmans moved to Paris, Texas, and changed the name of Ozark Fried Chicken, Inc., to O.F.C. Operating Co., Inc., doing business in Texas. The Paris "Ozark Fried Chicken" outlet was opened in 1965, and was managed by Mrs. Holman. At some time after moving to Paris, Alma Jean formed a corporation in Delaware, for the corporate purpose of selling franchises using the name Ozark Fried Chicken, Inc. She then sold several franchises in Texas, employing the names Ozark Fried Chicken and Miss Alma's Recipe. W. M. Holman was designated as president and chief executive officer of Ozark Fried Chicken, Inc.

The restaurant equipment which Short bought had been acquired by Alma Jean Holman from two sources. Part of the equipment was transferred from the Paris franchise, and the rest was purchased from a franchise in San Angelo, Texas, in 1970. Mrs. Holman testified that she bought this property in her individual capacity; she does not contend that this was a corporate transaction. There was no evidence introduced by either defendant as to the source of the funds which were used by Mrs. Holman to acquire the equipment that was sold to plaintiff Short. It is against this background that the Holmans make their claim that the equipment was Mrs. Holman's separate property.

Under Texas law, property acquired during marriage, other than that acquired by gift, devise, descent, or personal injury recovery, is community property. Texas Family Code § 5.01, V.T.C.A. A spouse's separate property consists of that acquired by the above-mentioned means and any property owned by the spouse before marriage. *Id.* All property possessed during marriage is presumed to be community property, until the contrary is satisfactorily proved. Texas Family Code § 5.-02. *See also Duncan* v. *Duncan,* 374 S.W.2d 800 (Tex.Civ.App.—Eastland 1964); *Kitchens* v. *Kitchens,* 407 S.W.2d 300 (Tex.Civ.App.—El Paso 1966). Since the restaurant equipment was acquired during the Holman's marriage and no evidence sufficient to overcome the presumption has been produced, it must be deemed to be community property.

This court need not consider whether the equipment or proceeds were Mrs. Holman's special community property. This portion of a community estate is generally exempt from the spouse's creditors under the Texas Family Code § 5.61(b)(2). The right of the United States to enforce its liens does not depend, however, upon state laws which regulate the rights of creditors. *United States* v. *Mitchell,* 403 U.S. 190, 91 S.Ct. 1763, 29 L.Ed.2d 406 (1971). The Tex-

as statute is subject to *Mitchell*, although it "defines property rights" rather than being a "mere exemption statute." *Broday* v. *United States*, 455 F.2d 1097, 1101 (5th Cir. 1972). Thus, even if the equipment and proceeds from its sale were Mrs. Holman's special community property, they are reachable by a federal tax lien.

■■ The controlling issue, then, is whether the transfer of the monthly payments due under the contract with Short from the Holmans to their son removes these funds from the compass of the federal lien. The court finds that the payments are subject to the lien, since the transfer may be set aside under Texas law as void. (*See United States* v. *St. Mary*, 334 F.Supp. 799, 802 (E.D.Pa.1971), wherein that court examined Pennsylvania law to draw the same conclusion.)

Under V.T.C.A. § 24.03(a) Business and Commerce Code,

(a) [a] transfer by a debtor is void with respect to an existing creditor of the debtor if the transfer is not made for fair consideration, unless, in addition to the property transferred, the debtor has at the time of transfer enough property in this state subject to execution to pay all of his existing debts.

Subsection (b) of § 24.03 states that "Subsection (a) of this section does not void a transfer with respect to a subsequent creditor of or purchaser from the debtor". But subsection (b) does not apply to the present situation, despite the fact that the transfer took place before the notice of levy on August 23, 1973. The obligation to pay the tax penalties arose before the transfer, as evidenced by the dates of assessment. The United States is deemed a creditor of the taxpayer from the date when the obligation to pay taxes accrues. *Coca-Cola Co. of Tucson* v. *C. I. R.*, 37 T.C. 1006 (1962), aff'd 334 F.2d 875 (9th Cir. 1964); *United States* v. *Kaplan*, 267 F.2d 114 (2d Cir. 1959); *United*

*States* v. *58th St. Plaza Theatre, Inc.*, 287 F.Supp. 475 (S.D.N.Y.1968). The circumstance that the notice of levy was issued after the transfer does not materially affect the question of whether the transferred property is subject to the federal lien. In *58th St. Plaza, supra*, the Government's lien arose from delinquent corporate income taxes. The court there commented:

[t]o permit taxpayers to manipulate assets during the pendency of Tax Court or I.R.S. proceedings and still shield themselves from transferee liability merely because such transfers were made prior to final decisions, would be manifestly unjust. The better result places the government in essentially the same position as that of a private creditor. Successful creditors . . . are not limited to reaching only those assets transferred . . . after their claims have been reduced to a judgment. 287 F.Supp. at 501.

■ It was virtually conceded by Alma Jean Holman, and the court finds, that the transfer was not "for fair consideration" within the meaning of § 24.03. *See, e. g., Fitzgerald* v. *Brown, Smith and Marsh Bros.*, 283 S.W. 576 (Tex.Civ.App.—Texarkana 1926). Actual intent to defraud creditors is not necessary to render a voluntary conveyance void as to the creditors. *First State Bank of Mobeetie* v. *Goodner*, 168 S.W.2d 941 (Tex.Civ.App.—Amarillo 1943). The burden is on the party seeking to uphold the transfer to show valid consideration or the capacity of the debtor to pay his debts. *Cf. Alamo Lumber Co.* v. *Guajardo*, 315 S.W.2d 672 (Tex.Civ.App.—Eastland 1958), vacated on other grounds, 159 Tex. 225, 317 S.W.2d 725 (1958). Here, the Holmans did not meet either burden; hence, as against the tax liens of the United States, the transfer of the right to payments to W. R. Holman is void. The United States, then, is entitled to receive the remaining $5,000.00 due on the $6,000.00 promissory note.

The sole remaining issue is that of attorney's fees. However disposed this court may be to award such fees to an innocent stakeholder forced into litigation to prevent double vexation, the rule seems well settled that "in United States tax cases, at least, the attorneys' fees and costs are tied to the fund. If the Government gets the whole fund, the fundholder takes nothing from it for attorneys' fees and costs." *Bank of America National Trust and Sav. Ass'n v. Mamakos*, 57 F.R.D. 198, 202 (N.D. Cal.1972). *See also United States v. Liverpool & London & Globe Ins. Co.*, 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268 (1955); *United States v. R. F. Ball Const. Co.*, 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510 (1958); *United States v. Gurley*, 415 F.2d 144 (5th Cir. 1969); *United States v. Hubbell*, 323 F.2d 197 (5th Cir. 1963). Plaintiff's reliance on *United States v. State National Bank of Connecticut*, 421 F.2d 519 (2d Cir. 1970) does not sufficiently distinguish this civil action from the above-cited authorities. Since the Government's lien here more than covers the amount in controversy, attorney's fees can not be deducted from the judgment and must be deied.