UNITED STATES of America, Plaintiff,

v.

Ramiro MOLINA, et al., Defendants.

Civ. A. No. L–81–37.

United States District Court,
S.D. Texas,
Laredo Division.

March 2, 1984.

On Motion to Alter or Amend
April 4, 1984.

Robert Darden, Asst. U.S. Atty., Houston, Tex., Vic Conrad, Tax Division, Dept. of Justice, Dallas, Tex., for plaintiff.

Ramiro Molina, pro se.

## MEMORANDUM OPINION

KAZEN, District Judge.

In April, 1983, this Court stayed all proceedings in this cause pending a decision by the United States Supreme Court in *United States v. Lucille Mitzy Bosco*, C.A.–3–77–1291–C. In May, the Supreme Court issued its opinion under the new name of *United States v. Rodgers*, 461 U.S. 677, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983). Since then, the taxpayers' lawyer has withdrawn from the case, and they are not now represented by counsel.

In *Rodgers*, the Supreme Court determined the relationship between § 7403 of the Internal Revenue Code of 1954 and homestead rights created by Texas law. The Court found that § 7403 permits a federal district court to order the sale of a homestead in which a delinquent taxpayer had an interest when the indebtedness arose, even if the taxpayer's non-delinquent spouse has a homestead right in the property. These judicial sale provisions do not violate the Due Process Clause of the Fifth Amendment because "[t]o the extent that third-party property interests are 'taken' in the process, § 7403 provides compensation for that 'taking' by requiring that the court distribute the proceeds of the sale 'according to the findings of the court in respect to the interest of the parties and of the United States' ". *Rodgers*, 103 S.Ct. at 2145.

This Court has already found that Ramiro and Ruben G. Molina are liable to the United States for unpaid employment taxes from 1976 through 1978. Following *Rodgers*, this Court must now decide whether the United States may foreclose on the Defendants' real property and, if so, how to distribute the proceeds of the foreclosure sale.

■ In April, 1976, Ramiro Molina purchased the subject property. On February 16, 1977, he conveyed an undivided one-half interest in the property to Ruben G. Molina. Ruben Molina's deposition testimony shows that he and his wife do not have a homestead claim to the property under Tex-

as law because he has never lived on it or intended to live on it. *Ellisor v. Ellisor*, 630 S.W.2d 746, 747 (Tex.Civ.App.—Houston [1st Dist.], 1982, no writ). Ramiro Molina and wife, however, do have a homestead interest in the property. He testified that they reside on the property and claim a one-half undivided interest as a homestead. *See e.g., Braden Steel Corp. v. McClure*, 603 S.W.2d 288 (Tex.Civ.App.—Amarillo, 1980, no writ). The Government does not dispute these findings.

■ *Rodgers* nevertheless allows this Court to order the judicial sale of a homestead, pursuant to 26 U.S.C. § 7403. Admittedly, *Rodgers* gives the Court discretion to refuse to order the sale, but "the limited discretion accorded by § 7403 should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." *Rodgers*, 103 S.Ct. at 2152. Since the Defendants have not presented any reasons for the Court to refuse to order a judicial sale, there is no basis for the exercise of that limited discretion here.

The Government is thus entitled to an order of sale of the entire property. The next question is how the proceeds of sale are to be distributed "in respect to the interests of the parties and of the United States." § 7403(c). Because only Ruben and Ramiro Molina themselves—as distinguished from their spouses—are delinquent taxpayers, the Court first considers whether subject property is held in community under Texas law and what legal consequences flow from that circumstance.

■ The evidence clearly indicates that Ruben was married at the time he acquired his interest in the property and it was not acquired by gift or inheritance. His half interest is community property. Ramiro Molina's deposition does not establish conclusively that his interest is community property because there is no evidence that he and his wife were married when he bought the property. *See*, Texas Family Code § 5.01(a)(1). In Texas, however, "property possessed by either spouse dur-

ing ... marriage is presumed to be community property." Texas Family Code Ann. § 5.02 (Vernon 1975). *See e.g., LeBlanc v. Waller*, 603 S.W.2d 265, 266 (Tex.Civ.App.—Houston [14th Dist] 1980, no writ). No evidence has been presented to rebut this presumption. Therefore the Court concludes that the property is community property of both Defendants and their spouses.

Section 5.61(c) of the Texas Family Code provides that "the community property subject to a spouse's sole or joint management, control, and disposition is subject to the liabilities incurred by him or her before or during marriage." *See e.g., Allen v. Linam*, 551 S.W.2d 448, 451 (Tex.Civ.App.—Texarkana, 1977, writ ref'd n.r.e.) (nondelinquent spouse's interest in homestead community property is available to satisfy the tax liabilities of other spouse); *see also Short v. United States*, 395 F.Supp. 1151 (E.D.Tex.1975) (community property can be reached to satisfy husband's tax liens).

■ Because Ruben Molina and his wife own an undivided one-half of subject property as community property and because community property is subject to liabilities incurred by either spouse, the Court concludes that 50% of the proceeds of sale should be subject to pay the tax lien.

A different result obtains as to the other half, however, because of its homestead status. A homestead right is an independent property right which vests in each spouse, *regardless of whether that spouse owns a fee interest in the homestead*. *Rodgers*, 103 S.Ct. at 2138–39. The Supreme Court analogized the homestead right to a life estate and the underlying ownership interest to a remainder interest. *Id.* Even if the entire underlying ownership interest is liable for the delinquent taxes—as the Court here concludes—the homestead right of an innocent party must still be protected. *Id.* at fn. 25.

■ Unlike *Rodgers*, which involved a widow and also a divorced spouse, Ramiro Molina and his wife are still married. The Government thus argues that the liability

of the underlying community estate overrides the homestead right of Ramiro's wife. The Government contends that this issue was left "open" by *Rodgers*, 103 S.Ct. at 2145, fn. 27, but this Court concludes that the Government misreads that aspect of *Rodgers*. The Supreme Court clearly held that the homestead right is a protectable property right separate and apart from the "underlying ownership interest," *i.e.*, the community ownership. Thus the Court held that the homestead right, standing alone, entitles a wife to receive a certain portion of the proceeds of sale. The Court then stated that, "[I]n *addition*, if we assume that (a non-delinquent spouse) *also* has a *protected* half-interest in the *underlying* ownership rights to the property being sold," her percentage of the proceeds would be even higher. 103 S.Ct. at 2145. (emphasis added). This was the only issue left open in *Rodgers*. Here, the Court has concluded that the community half-interest of Ramiro's wife is not protected. The result of that conclusion is only that her percentage of the proceeds will be smaller, not that she is entitled to nothing for her separate homestead right.

■ *Rodgers* suggests that the proper way to value the homestead right would be to calculate the present discounted value of a life estate, using statutory or commercial actuarial tables. *Id.* at 2145. The calculation would pertain to only the half of the proceeds in which Ramiro's wife has an interest, because under Texas law, one can obtain homestead rights in a jointly owned tract but only to the extent of her undivided interest. *Sipe v. Sayer*, 140 S.W.2d 297 (Tex.Civ.App.—Eastland, 1940, no writ). The Court does not presently have sufficient evidence to make this calculation, lacking any information as to the life expectancy of Ramiro's wife. The Government is directed to supplement the record within thirty (30) days, to furnish this information and suggest what percentage of the proceeds must be distributed to her based on the *Rodgers* formula.

In summary, after complying with the foregoing, the Government will be entitled

to an order of sale of subject property. The Government will be entitled to the proceeds of sale up to the amount of the lien, except for whatever percentage will compensate Ramiro Molina's wife for her homestead right in one-half of the property.

## ON MOTION TO ALTER OR AMEND

The United States moves the Court to amend or alter the findings contained in its Memorandum Opinion of March 2, 1984. First, the Government urges that because the homestead rights of Mrs. Ramiro Molina are in community property, those rights are subject to the satisfaction of her husband's tax liabilities. The Government argues that the ruling in *United States v. Rodgers*, 461 U.S. 677, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983), was based on the proposition that the woman's interest in the subject property was separate and not community. The Government then deduces that under Texas law, property can "only be separate or community" and if it is the latter, it is "subject to the separate tax liabilities of the other spouse." (Government's Memorandum at page 2). This Court respectfully disagrees.

It is true as a general proposition that fee ownership of property in Texas is either separate or community. It is also clear, however, that there is such a thing as a homestead right which is independent of either ownership concept. The following from *Rodgers* is instructive:

"The effect of these provisions in the Texas Constitution is to give each spouse in a marriage a separate and undivided *possessory interest* in the homestead, which is only lost by death or abandonment, and which may not be compromised either by the other spouse or by his or her heirs. It *bears emphasis* that the rights accorded by the homestead laws vest independently in each spouse *regardless of whether one spouse*, or both, *actually owns the fee interest* in the homestead .... [I]t may be said that the homestead laws have the effect of reducing the underlying ownership

rights in a homestead property to something akin to remainder interests and vesting in each spouse *an interest akin to an undivided life estate* in the property.... [T]he Texas homestead right is not a mere statutory entitlement, but a *vested property right.*"

103 S.Ct. at 2138–39. (emphasis added). The Supreme Court could not have spoken more clearly. Regardless of whether the *ownership rights* are separate or community, indeed regardless of whether the spouse even has any *ownership rights*, a spouse has a vested property right in the homestead. Further, while *Rodgers* partly dealt with the situation of a widow, it also dealt with a divorced spouse. In that connection the Supreme Court specifically noted that:

"The homestead character of property is not destroyed even by divorce, if one of the parties to the divorce continues to maintain the property as a proper homestead."

103 S.Ct. 2138 at fn. 10.

In other words, it is simply not true that the *Rodgers* opinion was decided on a separate-community analysis. Here the Court has held that the *ownership interest* of the Molinas is community property and therefore is subject to the debts of either spouse under Texas law. Mrs. Ramiro Molina's homestead property right, however, is not subject to those debts. Contrary to the Government's argument, this is not a question of logic but one of law. Again the following language from *Rodgers* is pertinent:

"... Texas establishes the family home or place of business as an enclave exempted from the reach of most creditors."

103 S.Ct. at 2138.

In other words, while Mrs. Molina's community property *ownership* interest is subject to the debts of her spouse, her homestead right is not.

Alternatively, the Government asks the Court to determine Mrs. Molina's homestead rights "by calculating the present discounted value of the life estates of both Ramiro Molina and his wife and excepting from the tax liabilities the wife's pro rata life estate share in their one-half of the proceeds." Frankly the Court is not sure what the Government is arguing in this regard except that the Government makes the naked assertion that "you cannot have in excess of 100% homestead property rights." No authority is cited for this abstract proposition, and the Court does not necessarily subscribe to it. For example, if five persons of varying ages, including some quite young, each had a life estate in a given piece of property, it may well be that the cumulative effect of their combined interests could exceed 100% under the *Rodgers* formula. In any event, the Court is not concerned with hypothetical situations. In this case there is no reason to value the life estate interest of Ramiro Molina, but only that of his wife.

In summary, the Court repeats that the Government may sell this homestead property. It may keep the 50% of the proceeds pertaining to the interests of Mr. and Mrs. Ruben Molina. It need not compensate Ramiro Molina for any interest he has in the undivided one-half. It also need not compensate Mrs. Ramiro Molina for her underlying community ownership interest. The only property interest which must be compensated is the homestead estate of Mrs. Ramiro Molina in ½ of the property. Again the Government is directed, as per *Rodgers*, to obtain life expectancy data and calculate the value of that estate. Unless the Government can suggest some other alternative, the Court proposes to treat a homestead estate as the "economic equivalent of a life estate". 103 S.Ct. at 2145. The Government shall respond on or before April 30, 1984.