**UNITED STATES of America, Plaintiff,**

v.

**Steven KAMIENIECKI, Morris Stein, Richard W. Leonard, Indian Head National Bank of Nashua, and Gertrude Gladstone, Defendants.**

**No. 2524.**

United States District Court
D. New Hampshire.

Dec. 9, 1966.

Thomas Manning, Dept. of Justice, Washington, D. C., Louis M. Janelle, U. S. Atty., John D. McCarthy, Asst. U. S. Atty., Concord, N. H., for plaintiff.

Richard W. Leonard, Morris D. Stein, Sherman D. Horton, Jr., Nashau, N. H., for defendants.

## OPINION

CAFFREY, District Judge.

This is a civil action of the United States seeking adjudication:

(1) that taxpayer-defendant Steven Kamieniecki is indebted to it for unpaid federal income taxes, penalties and interest for the years 1956 and 1957 in the total amount of $6289.36, plus interest;

(2) that the United States has valid and first liens in said amount upon the proceeds of a Certificate of Deposit issued by the Indian Head National Bank of Nashua and paid into the Registry of this court;

(3) of conflicting claims of right to said proceeds as between the United States and defendants Kamieniecki, Indian Head National Bank of Nashua, Leonard, Stein and Gladstone;

(4) the United States also seeks an order decreeing foreclosure of the federal tax liens against such proceeds; and

(5) for a deficiency judgment against the defendant Kamieniecki for any amount remaining between the judgment sought against Kamieniecki and the amount realized on a foreclosure, if any, of any of the federal tax liens.

Prior to the non-jury trial the parties defendant stipulated through counsel that the following allegations of the nine-paragraph Complaint may be taken as true:

"I. This is a civil action in which the plaintiff seeks to enforce its tax liens against an amount due the taxpayer-defendant Steven Kamieniecki from the defendant Gertrude Gladstone and to obtain a deficiency judgment against the taxpayer-defendant Steven Kamieniecki for unpaid federal income taxes, penalties and interest assessed against Steven Kamieniecki.

"II. This action is commenced pursuant to Section 7401 of the Internal Revenue Code of 1954 at the direction of the Attorney General of the United States with the authorization and at the request of the Commissioner of Internal Revenue, a delegate of the Secretary of the Treasury of the United States.

"III. This Court has jurisdiction of this action under Sections 1340 and 1345 of Title 28, United States Code, and Sections 7402 (a) and 7403 of the Internal Revenue Code of 1954.

"IV. (a) The taxpayer-defendant Steven Kamieniecki resides on Route 101, Manchester Road, Amherst, New Hampshire, within the jurisdiction of this court.

(b) The defendant Morris Stein is an attorney doing business at 184 Main Street, Nashua, New Hampshire, within the jurisdiction of this court.

(c) The defendant Richard W. Leonard is an attorney doing business at 142 Main Street, Nashua, New Hampshire, within the jurisdiction of this court.

(d) The defendant Indian Head National Bank of Nashua is doing business at 146 Main Street, Nashua, New Hampshire, within the jurisdiction of this court.

(e) The defendant Gertrude Gladstone resides at 374 Main Street, Nashua, New Hampshire, within the jurisdiction of this court.

"VII. On information and belief, on May 26, 1964, the Superior Court

of Hillsborough County, New Hampshire, entered a verdict in favor of the tax-payer defendant Steven Kamieniecki against the defendant Gertrude Gladstone in the amount of $4,368.62 and, on information and belief, no part of said verdict has been paid.

"VIII. On January 6, 1964, the defendant Indian Head National Bank of Nashua issued Negotiable Certificate of Deposit No. B 281 payable to the order of the defendants Morris Stein and Richard Leonard, attorneys for the defendant Gertrude Gladstone and Steven Kamieniecki, respectively, and said Negotiable Certificate of Deposit was issued in the amount of $5,507.71, payable on January 6, 1965 with interest at the rate of four per cent per annum or payable prior thereto upon 90-days written notice. On information and belief said Negotiable Certificate of Deposit was issued to secure any verdict which the taxpayer-defendant Steven Kamieniecki might obtain against the defendant Gertrude Gladstone in the action then pending in the Superior Court of Hillsborough County, New Hampshire, which resulted in the verdict described in paragraph VII in favor of the taxpayer-defendant Steven Kamieniecki.

"IX. The defendants Morris Stein, Richard W. Leonard, Gertrude Gladstone and the Indian Head National Bank of Nashua have, or may claim to have, an interest in the amounts described in paragraphs VII and VIII."

With reference to paragraph V. of the complaint, all parties stipulated that the assessments described therein were made in the amounts and on the dates recited, and that defendant Kamieniecki received notice of the assessments at about the time recited. However, defendants Kamienicki and Leonard deny that the assessments so made were factually correct, and also deny that said assessments accurately reflect the actual income earned by Kamieniecki in the calendar years 1956 and 1957. The paragraph in question reads as follows:

"V. On September 15, 1961, the District Director of Internal Revenue made assessments against the taxpayer-defendant Steven Kamieniecki for federal income taxes, penalties and interest for the taxable periods and in the amounts set forth in the following schedule; and on September 15, 1961 the District Director duly gave the taxpayer-defendant notices of said assessments and demanded payment thereof, but said taxpayer-defendant has not made complete payment and there remains due from said taxpayer-defendant an outstanding balance of $6,289.36, as described in the following schedule, plus interest thereon according to law.

| Taxable Period | Tax | Penalty | Interest | Amt. Paid | Outstanding Balance |
|---|---|---|---|---|---|
| 1956 | $1,776.94 | $ 888.47 | $470.89 | $353.47 | $2,782.83 |
| 1957 | 2,056.61 | 1028.31 | 421.61 | –0– | 3,506.53 |
| | | | | TOTAL | $6,289.36" |

In addition to all of the above facts, which are taken as true for purposes of this case, after trial I find and rule as follows:

The answers filed by defendants Leonard, Stein and Gladstone admitted the truth of the allegations in paragraph VI. of the complaint. The Indian Head National Bank recited in its answer that it had no knowledge of these allegations, and no reference whatsoever to paragraph VI. appears in the answer of de-

fendant Kamieniecki, apparently by reason of oversight. Paragraph VI. of the complaint recites:

"On November 7, 1961, an agent of the District Director of the Internal Revenue filed with the Town Clerk, Amherst, New Hampshire, a notice of federal tax lien for the assessments described in paragraph V; and on November 9, 1961 an agent of the District Director of Internal Revenue filed with the Register of Deeds, Hillsborough County, Nashua, New Hampshire, a notice of federal tax lien embodying the assessments described in paragraph V."

In view of the agreement of the various parties as to the truth of virtually all of the allegations in plaintiff's complaint, the only issues which remain for decision are the factual validity, *vel non*, of the assessments described in paragraph V, and the legal question of the priorities of the competing liens to the proceeds of the Certificate of Deposit.

Defendant Steven Kamieniecki was engaged in the scrap meal or junk business from 1951 through 1958. His principal business activity consisted of purchasing junk automobiles, usually by bidding for them, the cannibalism and processing of the metallic components of these cars, and the sale of the various metals to scrap dealers. He also purchased various types of machinery containing metallic parts, and he testified that about 1956 he converted his operation from "being a small junkie" to "being a somewhat big junkie with a big overhead." In 1956, 1957 and 1958 he also sold Christmas trees, and to some extent became involved in the demolition business beginning in 1957. In the period 1957 through 1961 he obtained various loans from defendant Indian Head National Bank on the basis of his unsecured personal notes. In the years 1956 and 1957 he made deposits to a checking account he maintained at the Second National Bank of Nashua in the amounts of $16,754.85 and $18,962.94 respectively.

The income tax returns which Kamieniecki filed in 1959 for the years 1956 and 1957 reported as his total receipts from the business the sums of $10,653.60 and $15,458.00 respectively. They disclosed gross profits for the two years in the amounts of $1330.60 and $6240.00 respectively, net losses for each of the two years in the amounts of $388.40 and $707.00 respectively, and adjusted gross income and tax due for both years in the amount of Zero

It also appears, and I find, that while employed in New York City during the period 1942 to 1950, when taxes were withheld from the salary paid to him by his employer, Gray's Drug Store, located at 53d Street and Broadway, Kamieniecki did file federal income tax returns for the years 1942 through 1949. He moved back to New Hampshire in October of 1950 where he failed to file timely returns for the years 1950 through 1958. The returns for the two years in issue (calendar 1956 and 1957) purport to be signed by taxpayer on April 29, 1959. They were time-stamped into the Internal Revenue office on June 30, 1959 and each bears the signature of an attorney named Raudonis as preparer. The legend, "This return prepared from information orally given me by taxpayer as he consulted receipts and records in his own possession," appears above Mr. Raudonis' signature on the Form 1040 for the year 1956. The same legend is typed on the face of the 1957 return following a typed notation "Statement by A. J. Raudonis." No credible evidence was offered as to why taxpayer did not turn over the "receipts and records" directly to Mr. Raudonis for his use in preparing the returns.

■■ I find that defendant Kamieniecki failed to keep adequate books and records of a type which would permit anyone to accurately determine therefrom the actual income of his business and himself for the calendar years 1956 and 1957. Consequently I rule that not only was it reasonable for the Internal Revenue to. resort to the bank deposit and cash expenditure method of recon-

structing Kamieniecki's income, but it was indeed imperative to employ this method to determine his correct tax liability, in view of the paucity of available business records and having in mind that deposits made at the Second National Bank of Nashua alone exceeded what, on his belatedly filed returns, he claimed to be his gross income for each of the two years.

A recomputation of Kamieniecki's gross receipts for the years 1956 and 1957 on the basis of the bank deposit and cash disbursement method, prepared by Special Agent Jeannotte, was admitted in evidence as part of Government Exhibit 10. The work sheets supporting this computation of income were admitted in evidence as Government Exhibits 1, 2 and 3. Special Agent Jeannotte testified and explained his computations in great detail.

 I find that the bank deposit and cash expenditure method used by him is a fair and accurate reflection of the true total business receipts of the defendant Kamieniecki for the years 1956 and 1957, and that his computation showing a tax deficiency of $1776.94 for the year 1956 and a tax deficiency of $2056.61 for the year 1957 is factually correct, and I find that the returns filed belatedly by Kamieniecki in 1959 showing no adjusted gross income and no tax due are both false and inaccurate.

I find, on the basis of the following:

(1) that Kamieniecke filed federal tax returns for the years 1942 through 1949 when in an employee status in New York, where the fact that he was subjected to withholding compelled him to file returns as a practical matter,

(2) that he failed to file any returns from 1950 to 1959 although self-employed in a business activity,

(3) that he failed to keep adequate and accurate books and records as required by law,

(4) that he did not make available even the mish mash of odd slips, papers, etc. (e. g., Defendant's Exhibit M) that he did retain to Mr. Raudonis who prepared his returns in 1959, with the result that Raudonis felt compelled to put the disclamatory legend on the face of both returns,

(5) that Kamieniecki knew, on the basis of even the fragmentary records which he proffered in evidence that he earned more than $600.00 in both 1956 and 1957, and, finally,

(6) that he begrudgingly testified at the trial that his returns as filed were in fact erroneous and that he felt that "in 1956, top money I made, profit clear for myself, $2500, and maybe $3200 in 1957, tops,"

that defendant Kamieniecki's failure to file returns for the years 1956 and 1957 when due, evidences a consistent fraudulent intent and scheme on his part to evade his tax obligations for the years 1956 and 1957, as a consequence of which the District Director properly included in the assessments for 1956 and 1957 fraud penalties, under Section 6653(b) of the Internal Revenue Code of 1954, in the amounts of $888.47 for 1956 and $1028.31 for 1957, as well as interest in the amount of $470.89 for 1956 and $421.61 for 1957. Thus, having in mind that a Form 870, Waiver of Restrictions on Assessment and Collection of Deficiency, executed in August 1961 by Kamieniecki, was admitted in evidence (Government Exhibit 9), I rule that the Internal Revenue properly made total assessments against Kamieniecki in the amount of $3136.30 for 1956 and $3506.-53 for 1957, and that after receiving credit for $353.47 paid against the 1956 assessment Kamieniecki is indebted to the United States in the total amount of $6289.36, plus interest as provided by law, and that the United States has a valid lien for unpaid federal income tax liabilities in that amount upon the proceeds of the Certificate of Deposit.

There remains for decision the question of the priority of the competing claimed liens of the United States, the Indian Head National Bank of Nashua,

and Attorney Leonard. The claim of lien of the Indian Head National Bank arises out of the following background facts:

Kamieniecki was engaged for the demolition of a building owned by Gertrude Gladstone. While he was engaged in the demolition operation an outer wall caved in and fell, thus necessitating additional cleanup and repair work. Gladstone sued Kamieniecki in state court in an action of tort for negligence in connection with the falling of the wall. Kamieniecki in turn filed a cross-action in the nature of *quantum meruit*, seeking to recover for the extra work required in cleaning up and repairing the situation. A real estate attachment was made by Kamieniecki in his cross-action. Gladstone obtained a dissolution of this real estate attachment by substituting therefor a $5,000 Certificate of Deposit issued by the Indian Head National Bank of Nashua on February 17, 1961, payable to Morris Stein, attorney for Gertrude Gladstone, and Richard Leonard, attorney for Steven Kamieniecki. Upon the maturity of this first Certificate, a successor Certificate was issued for the $5,000 plus the interest earned on the initial Certificate, and this procedure was followed as each Certificate matured, until finally a Certificate which with interest increments was worth $5,726.79 was deposited in the Registry of this court in connection with the Answer and Counterclaim for Interpleader filed herein by the Indian Head National Bank of Nashua.

The Bank claims that it has a valid possessory lien to the above-mentioned Certificate of Deposit to the extent of $5,000, plus accrued interest. The basis of this claim is the testimony of its Vice-President John A. Worthen, who stated at the trial that he had the responsibility of making all loans to Kamieniecki on behalf of the Indian Head National Bank during the period 1957 through 1963. He testified that on an unnamed date in February 1961 he had a conversation with Kamieniecki, the substance of which was that as soon as the Kamien-

iecki v. Gladstone litigation was terminated favorably to Kamieniecki, and he thus became entitled to the proceeds of the Certificate of Deposit as between him and Gladstone, he would then turn over to the Bank the Certificate of Deposit in payment for the two $2,500 loans made to him by the bank on February 15 and February 27, 1961.

I reject both the testimony of Worthen and Kamieniecki on this point, and I find that no such conversation ever took place and that no agreement or oral pledge ever was made by Kamieniecki to the Indian Head National Bank to secure these two loans. In so ruling, in addition to my evaluation of the credibility of the witnesses, I have in mind that Defendant's Exhibit B, the Liability Ledger of the Indian Head National Bank, totally contradicts Worthen's testimony, since with the exception of a loan not involved herein, made on January 3, 1957 and repaid on April 3, 1957, every one of the bank's loans to Kamieniecki and the entire balance of his account at all times from April 2, 1957 through September 12, 1963 is carried under a column headed "Outstanding Balances—Direct *Unsecured*." Both of the February 1961 loans of $2,500 are carried in this column and all loans to Kamieniecki are coded, on the same Exhibit, with a numerical key, as either Key 4, meaning time loan unsecured, or Key 2, meaning demand loan unsecured. It is not without significance that on September 12, 1963 Kamieniecki's entire balance of $8,000 was charged off against the bank's reserve for bad debts.

I find and rule that the Indian Head National Bank of Nashua has no secured interest whatsoever in the Certificate of Deposit herein, and that its filing of notice of lien on November 8, 1961, the day after the federal tax lien was filed with the Town Clerk at Amherst, New Hampshire, is a vain gesture without legal significance. Consequently, the Bank has no rights to any portion of the proceeds of the Certificate of Deposit.

To evaluate the claimed attorney's lien of Richard Leonard, the following background facts must be considered. He was retained by Kamieniecki when the Gladstone suit against Kamieniecki was filed, and he prepared Kamieniecki's cross-action and the real estate attachment which led to the substitution of the Certificate of Deposit as security for the Kamieniecki v. Gladstone cross-action. When advised that the Newfoundland American Insurance Company, Ltd. disclaimed coverage on Kamieniecki's liability policy and refused to defend the claim of Gladstone against him for the collapse of the wall and roof, Attorney Leonard prepared a petition for a declaratory judgment in state court and successfully carried it through the New Hampshire Superior Court and then to the New Hampshire Supreme Court, as a result of which the Insurance Company was compelled to defend the Gladstone v. Kamieniecki action which, after trial, terminated in a finding for Gladstone against Kamieniecki in the amount of $4,050, plus interest and costs, which judgment was paid by the Insurance Company.

Attorney Leonard represented Kamieniecki in the cross-action which eventually resulted in a judgment and verdict in favor of Kamieniecki, in the amount of $5,429.58, and the Judge of the New Hampshire Superior Court decreed an attorney's fee in his favor in the amount of $1,801.33, plus costs of $25.-60, and plus one-third of the interest accruing until judgment satisfied. He also has represented Kamieniecki herein. Kamieniecki has made no payment to Leonard for legal services in any of these cases.

 There are two legal obstacles to Mr. Leonard's recovering solely on the basis of an attorney's lien. First there is the law of the State of New Hampshire prior to the enactment of RSA 311:13, the New Hampshire Attorney's Lien statute, which became effective on May 28, 1963. Under previously prevailing common law, an attorney in New Hampshire could only obtain a lien for an attorney's fee to the taxable amount of $1.00. RSA 525:13. Peterson v. John J. Reilly, Inc., 105 N.H. 340, 200 A.2d 21 (1964). The second barrier is the fact that the priority of a lien created by state law depends on the time it attached to the property in question and became choate. United States v. City of New Britain, 347 U.S. 81, 86, 74 S.Ct. 367, 98 L.Ed 520 (1964). A state lien is "perfected in the sense that there is nothing more to be done to have a choate lien when the identity of the lienor, the property subject to the lien, and the *amount of the lien* are established." Id., p. 84, 74 S.Ct., p. 369 (Emphasis added.) Because the amount of Leonard's lien was still undetermined and indefinite when the federal tax lien was filed in November of 1961, his lien was only an inchoate lien at the critical date and, therefore, is subordinate to the federal tax lien. United States v. Pioneer American Insurance Co., 374 U.S. 84, 90–91, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963).

The final question presented by this record is whether or not Attorney Leonard should nevertheless be allowed an attorney's lien on the basis of equitable principles analogous to the doctrine of unjust enrichment, it being crystal clear on this record that legal services rendered by him substantially and materially contributed to the creation of the fund now on deposit with the Clerk of this court, since but for his successful efforts in the declaratory judgment action which forced the Insurance Company to defend and ultimately to pay the judgment in the Gladstone v. Kamieniecki case, the security posted in the Kamieniecki v. Gladstone case would have been substantially wiped out, leaving a very small amount remaining.

The principal authority for the allowance of an attorney's lien, in a case where the facts very closely duplicate those in the instant case, is the opinion of the

Court of Appeals for the Fifth Circuit in the case of United States v. Hubbell, 323 F.2d 197 (1963). Like the instant case that was litigation in which a federal tax lien was being asserted against a fund created by the successful prosecution of state court litigation. In the *Hubbell* case the Court said, at p. 201:

"It follows that the fund here claimed was created by the efforts of and at the expense of appellees and their attorneys. On oral argument attorneys for the government assured the Court that fees earned by appellees' attorneys 'would be taken care of.' In order to insure that the efforts and expenses of appellees and their attorneys will be 'taken care of,' we remand this case to the trial court for a determination of the amount of reimbursement equitably due appellees and their attorneys for creating the fund for the benefit of the government."

To the same effect, in a case not involving the United States, see Sprague v. Ticonic Nat. Bank, 307 U.S. 161, 166, 59 S. Ct. 777, 83 L.Ed. 1184 (1938).

I find that the successful efforts of Attorney Richard Leonard caused the creation of the fund on deposit in the Registry of this court. Were it not for his efforts the fund, against which the federal tax lien has been successfully asserted, would not exist. Although it is a rare situation in which a court should exercise its discretion in awarding an attorney's fee out of a fund such as this, I rule that this is one of those very rare cases where equitable considerations compel the awarding of compensation. I rule that the fair and reasonable value of Attorney Leonard's services is in the amount of $2,000, to be paid out of the fund now held in the registry of this court.

The balance of the fund, or $3,726.79, is to be paid over to the United States in partial satisfaction of its valid lien for unpaid federal income taxes.

Judgment in accordance with this opinion.