UNITED STATES of America

v.

FIDELITY–PHILADELPHIA TRUST COMPANY, a corporation, Frank F. Truscott, George D. Kline, and Samuel Kagle.

Civ. A. No. 42351.

United States District Court,
E. D. Pennsylvania.

Nov. 2, 1970.

Sidney R. Bixler, Tax Division, Department of Justice, Washington, D. C., for plaintiff.

George D. Kline, Samuel Kagle, Philadelphia, Pa., for defendant, attorneys.

Arthur R. Littleton, Philadelphia, Pa., for Fidelity Bank.

## OPINION AND ORDER

HANNUM, District Judge.

This is a civil action of the United States seeking to have this court determine the interest of all claimants in a fund held by the Fidelity-Philadelphia Trust Company (The Fidelity Bank).

In this non-jury case the following allegations of the Complaint may be taken as true:

"1. The defendant, Fidelity-Philadelphia Trust Company, at all times hereinafter mentioned, was and still is a banking corporation duly authorized to do business in the State of Pennsylvania, and has its principal place of business in Philadelphia, Pennsylvania.

"2. This action has been brought with the authorization and at the request of the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury of the United States, and by the direction of the Attorney General of the United States, pursuant to the provisions of Section 7401 of the Internal Revenue Code of 1954.

"3. Jurisdiction of this action is conferred upon this Court by Sections 1340 and 1345 of Title 28, United States Code, and Sections 7401 and 7402 of the Internal Revenue Code of 1954, for the reason that this is a civil action arising under the Internal Revenue laws of the United States wherein the United States seeks to recover judgment enforcing a levy under Section 6332 of the Internal Revenue Code of 1954.

"4. On December 1, 1961, a delegate of the Secretary of the Treasury made an assessment in the amount of $116,158.67 for 1947, 1948 and 1949 corporate income taxes, penalties and interest against O'Brian Buick, Inc., a Pennsylvania corporation, which ceased doing business in the year 1955. This assessment was made in accordance with a decision entered in the Tax Court of the United States on November 3, 1961, at Docket No. 82488, pursuant to a stipulation of the parties. The total amount of this liability now remains outstanding, together with interest and costs as provided by law.

"5. On November 9, 1962, a delegate of the Secretary of the Treasury made an assessment in the amount of $81,853.37 for 1946, 1947, 1948 and 1949 personal income taxes, penalties and interest against Carl H. O'Brian, now deceased. This assessment was made in accordance with a decision entered in the Tax Court of the United States on October 15, 1962, at Docket No. 82490, pursuant to a stipulation of the parties. The total amount of this liability now remains outstanding, together with interest and costs as provided by law.

"6. On June 14, 1963, a delegate of the Secretary of the Treasury made an assessment in the amount of $83,-423.89 for 1951, 1952 and 1953 personal income taxes, penalties and interest against Carl H. O'Brian, now deceased, and his wife, Miriam O'Brian, who resides at 69 Cranmor Drive, Toms River, Ocean County, New Jersey. This assessment was made in accordance with a decision entered in the Tax Court of the United States on October 15, 1962, at Docket No. 82489, pursuant to a stipulation of the parties. The total amount of this liability now remains outstanding together with interest and costs as provided by law."

In addition to the above uncontested facts, after trial the court finds the following facts:

1. On August 24, 1964, a delegate of the Secretary of the Treasury of the United States served three notices of levy upon the Fidelity-Philadelphia Trust Company for the purpose of administratively collecting the outstanding tax liabilities of O'Brian Buick, Inc., Carl H. O'Brian, and Carl H. and Miriam O'Brian.

2. On the date that federal notices of levy were served, the Fidelity-Philadelphia Trust Company was holding funds for the benefit of O'Brian Buick, Inc., Carl H. O'Brian and Carl H. and Miriam O'Brian on deposit in two accounts bearing the captions "Samuel Kagle and Frank F. Truscott, Attorney Account".

3. The Fidelity-Philadelphia Trust Company on that date refused to pay over the funds on deposit to the United States, and has at all times thereafter refused and failed to surrender any part of the aforementioned fund.

4. The funds on deposit in the above mentioned accounts were the proceeds of the sale in 1956 of all the assets of O'Brian Buick, Inc., a corporation owned by two equal shareholders, Carl H. O'Brian and Jules DeHaan. The sale was negotiated by Frank F. Truscott and George D. Kline representing O'Brian Buick, Inc. and Carl H. O'Brian and Myron Jacoby representing Jules DeHaan and O'Brian Buick, Inc.

5. The fund was set up because Carl H. O'Brian and Jules DeHaan were in disagreement over the proceeds of the sale. It was therefore stipulated that the fund was to be held by the attorneys for the respective parties until such time as the conflicts were resolved.

6. Subsequently, the name of Samuel Kagle was substituted as Trustee for Myron Jacoby on the above mentioned account when Samuel Kagle took over the representation of Jules DeHaan from Myron Jacoby.

7. Frank F. Truscott, George D. Kline and Samuel Kagle have an attorney's lien on the fund deposited in the Fidelity-Philadelphia Trust Company, based upon their efforts in (a) establishing and preserving the funds in question, (b) maintaining records with respect to the claims against the funds and (c) earning interest as a consequence of the establishment of the fund.

## DISCUSSION

The legal question to be determined by this court is the priority of the liens asserted against the fund now held by the Fidelity Bank.

■■ The lien asserted by the United States arose pursuant to section 6321 of the Internal Revenue Code, 26 U.S.C. § 6321. The priority of this federal tax lien, as against liens created under state law, is governed by the common law rule —"The first in time is the first in right." United States v. New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954); United States v. First Nat. Bank & Trust Co. of Fargo, N. D., 386 F.2d 646 (8th Cir. 1967). It is critical, therefore, to determine when competing liens, whether. federal or state created, come into existence or become valid for the purpose of the rule. It is a matter of federal law whether such lien has acquired sufficient substance and has become so perfected as to defeat a later arising or later filed federal tax lien. United States v. Pioneer American Ins. Co., 374 U.S. 84, 83 S.Ct. 1651, 10 L. Ed.2d 770 (1963). The federal rule is that liens are "perfected in the sense that there is nothing more to be done to have a choate lien—when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." United States v. New Britain, supra, 347 U.S. at 84, 74 S.Ct. at 369.

■ The federal tax lien provided by section 6321 of the Internal Revenue Code, 26 U.S.C. § 6321, arises and is a perfected choate lien when assessed pursuant to section 6322, 26 U.S.C. § 6322, which attaches to the taxpayer's property upon demand and refusal to pay. United States v. Pioneer American Ins. Co., *supra*; United States v. New Britain, *supra*; United States v. State National Bank of Connecticut, 421 F.2d 519 (2d Cir. 1970); United States v. First Nat. Bank & Trust Co. of Fargo, N. D., *supra*.

The answer to the question of when the attorney's lien became choate is not crystal clear. There is no doubt as to the identity of the lienors, nor the identity of the property subject to the lien, but there is no direct evidence on the record which sets a specific date that the $5,000 fee was agreed upon. However, there is considerable testimony which gives a strong indication that an agreement as to this fee was reached at an early stage in the matters which eventually led to these proceedings.

The following passages from the record have led this court to the conclusion that agreement as to the fee was reached prior to the time the federal tax lien arose:

"Mr. Kagle:

* * * It was an agreement that was reached a long time ago between Mr. DeHaan, Mr. Kline and I * * *" (N.T. 28)

"Mr. Kagle:

And I think Mr. DeHaan died in '57 or '58 * * *" (N.T. 22)

"Mr. Truscott:

* * * If I had known what the Government would do or has done now, we would have paid ourselves at the same time as payment was made to Carl O'Brian and DeHaan. But I felt that since there was the overhanging claim, since we were dealing with the Government, since Mr. Kline was actively seeking a compromise settlement, we should not reduce the fund by taking a fee." (N.T. 71)

The court enters into no encomium on the stature and standing of Samuel Kagle, Esq., George D. Kline, Esq., and the late Frank Truscott, Esq., members of the bar of this court. They need none. Their testimony carries great weight with the court. From the passages of testimony quoted above it is apparent that an agreement had been reached as to the fee to be paid as early as 1956 or 1957. As such, they have established a choate lien which has priority over the federal tax lien.

There is, however, an alternate ground which strongly supports the result which the court has reached. From the record it is absolutely clear that the legal services rendered by these attorney-defendants substantially and materially contributed to the creation of this fund. (N.T. 37–38, 60–61, 94–96.) Likewise, they expended considerable time in maintaining this fund for a period in excess of eight years. (N.T. 25–27, 31, 37–38, 69, 74.) But for their efforts, the Internal Revenue Service might have had no fund upon which to levy, or, at a minimum, the fund would not have been as substantial as it has proved to be. Therefore, whether or not these attorneys had established a valid prior lien, equitable principles analogous to the doctrine of unjust enrichment compel the court to award them a reasonable attorney's fee for their services in establishing and maintaining the fund. See, United States v. Hubbell, 323 F.2d 197 (5th Cir. 1963); United States v. Kamieniecki, 261 F.Supp. 683 (D.N.H., 1963). Although it is a rare situation in which the court should exercise its discretion in awarding an attorney's fee out of a fund such as this, this is one of those situations where dominating reasons of justice dictate the awarding of compensation. Sprague v. Ticonic Nat. Bank, 307 U.S. 161, 59 S. Ct. 777, 83 L.Ed. 1184 (1939); United States v. Kamieniecki, *supra*.

Therefore, a blend of strong evidence that this attorney's lien was choate prior to the attachment of the government's tax lien, together with equitable principles analogous to the doctrine of unjust enrichment compel the court to rule that the fair and reasonable value of these attorneys' services be paid out of the fund in question.

The court concludes that the fair and reasonable value of these attorneys' services is $5,000. This amount is to be divided equally between the estate of Frank F. Truscott, decedent, George D. Kline, Esq., and Samuel Kagle, Esq., and is to be paid out of the fund now held by the Fidelity Bank. The balance of the fund is to be paid over to the United States in partial satisfaction of its valid lien for unpaid federal taxes.

Judgment in accordance with this Opinion.

### ORDER

And now, this 2nd day of November 1970, it is ordered that judgment be hereby entered for the defendants in the amount of five thousand ($5000) dollars to be paid out of the funds now on deposit with the Fidelity-Philadelphia Trust Company (The Fidelity Bank) in accounts numbered 01–053397–4 and 00–15–72–7, and bearing the captions "Samuel Kagle and Frank F. Truscott, Attorney Account". The said sum shall be paid in equal shares to George D. Kline, Samuel Kagle, and the estate of Frank F. Truscott. The balance of the fund is to be paid over to the United States in partial satisfaction of its lien for unpaid federal taxes.