IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 11, 2007

Charles R. Fulbruge III
Clerk

No. 06-40266

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

JOSE LUIS BETANCOURT

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:03-CR-90-ALL

Before JONES, Chief Judge, and HIGGINBOTHAM and CLEMENT, Circuit
Judges.

PER CURIAM:[*]

Jose Betancourt appeals the district court's grant of summary judgment
in favor of the IRS on the question of whether his attorney, Baltazar Salazar, is
entitled to attorney's fees for his representation of Betancourt. For the following
reasons, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

## I. FACTS AND PROCEEDINGS

Jose Betancourt was convicted of two counts of possession with intent to distribute cocaine and one count of conspiracy to possess with intent to distribute more than five kilograms of cocaine. He was sentenced to serve 292 months in prison and to forfeit, inter alia, his fifty percent share of the proceeds from a Texas lottery jackpot of over five million dollars.[1] Betancourt and Guadalupe Rosales had an oral agreement by which they would jointly purchase fifteen lottery tickets twice a week and split any winnings. While his case was on appeal, Betancourt entered into a written agreement with Rosales to release Rosales's share of the winnings (held by the government pending the appeal) in exchange for a payment of $150,000 from Rosales. Betancourt entered a Consent to Transfer Funds, pursuant to FED. R. CRIM. P. 32.2(d), allowing the district court to order the release of Rosales's share of the winnings. The district court subsequently ordered the transfer to Rosales.

However, Betancourt did not disclose to the court that he was to receive payment for his consent to the transfer, and once the government learned of the payment, it filed a motion for production of the agreement between Rosales and Betancourt, asserting that any money Rosales might pay Betancourt was forfeited property. The court ordered the disclosure of the agreement and ordered that once the money was released by the government, Betancourt's counsel was to deposit $76,000 into the court's registry.

On April 14, 2005, the IRS sent a Notice of Levy to Rosales's attorney, Reynaldo Marino, indicating that he was forbidden from releasing the $150,000 to Betancourt because the money was subject to a lien on unpaid federal income tax. Betancourt owed the IRS over $1.7 million. Betancourt challenged the

---

[1] Betancourt appealed the sentence and forfeiture, and this court affirmed. United States v. Betancourt, 422 F.3d 240, 252 (5th Cir. 2005).

IRS's Notice, and the district court ordered that Rosales deposit the entire $150,000 into the court's registry until the dispute was resolved.

The IRS and Betancourt each moved for summary judgment. The IRS asserted that it was entitled to the disputed funds in satisfaction of two Federal Tax Liens filed in South Carolina and Texas in May of 2005. Betancourt's attorney, Baltazar Salazar, asserted that he had a superior claim on the money, for while a federal tax lien ordinarily has first priority, such a lien is not valid "against an attorney who, under local law, holds a lien upon or a contract enforceable against [a judgment or other amount in settlement of a claim], to the extent of his reasonable compensation for obtaining such judgment or procuring such settlement." 26 U.S.C. § 6323(b)(8). Salazar asserted that he had an attorney's lien against the entire $150,000, in compensation for his efforts in procuring the settlement. In support of his claims, Salazar submitted a document, signed by Betancourt, granting him power of attorney and an affidavit detailing his attorney's fees generated by his representation of Betancourt, which totaled $247,550.[2] Salazar asserted that all of these fees stemmed from his efforts at procuring the settlement, not for representing Betancourt during the criminal proceedings. The district court granted summary judgment to the IRS, finding that Salazar failed to prove the existence of a lien or contract enforceable under Texas law. Betancourt appeals this judgment.[3]

---

[2] Salazar asserted that his fees included $54,000 for twenty trips between Houston and Brownsville; $27,000 for the 120 hours he spent investigating the facts, interviewing witnesses and reviewing documents; $55,000 for the 200 hours he spent preparing for trial; and $49,000 for the 200 hours he spent working on the state civil case against Betancourt. There is no mention of the settlement with Rosales in the affidavit.

[3] Though Betancourt is nominally the appealing party in this case, the dispute only concerns Salazar at this point, so Appellant's contentions are generally attributed to him.

## II. STANDARD OF REVIEW

This court reviews the district court's grant of summary judgment de novo. Shell Offshore, Inc. v. Babbitt, 238 F.3d 622, 627 (5th Cir. 2001). The district court's grant of "[s]ummary judgment is appropriate if the record shows 'that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'" Id. (quoting FED. R. CIV. P. 56(c)).

## III. ANALYSIS

Federal law determines the relative priority of a federal tax lien. United States v. Equitable Life Assurance Soc'y of the U.S., 384 U.S. 323, 328, 330 (1966); United States v. McCombs, 30 F.3d 310, 321 (2d Cir. 1994). Federal law follows the common law rule that a lien "first in time is the first in right." United States v. City of New Britain, 347 U.S. 81, 85 (1954) (internal quotation marks omitted). A federal tax lien arises upon the assessment of the tax. Hussain v. Boston Old Colony Ins. Co., 311 F.3d 623, 628 n.2 (5th Cir. 2002) (citing United States v. McDermott, 507 U.S. 447, 448 (1993)). Neither party disputes that Betancourt had unpaid taxes in 2002 and 2003, but the record also contains no evidence of when the IRS assessed the tax, which would have perfected its lien. See McDermott, 507 U.S. at 449. Salazar suggests that there is a genuine issue of material fact about when the tax was assessed, which should have precluded the district court from granting summary judgment to the IRS. However, he does not actually point to any direct conflict between the facts as asserted by the parties. The district court assumed that the tax must have been assessed, creating the liens, by May 12, 2005, the date the IRS filed its Notice of Lien in South Carolina. Salazar does not assert that he filed a formal lien before this date, and the federal lien would thus ordinarily have priority under the "first in time rule."

Salazar asserts that 26 U.S.C. § 6323(b)(8), which creates "superpriority" status for certain attorney's liens, establishes his right to the money. See United

States v. Ripa, 323 F.3d 73, 80 (2d Cir. 2003). Under the statute, an attorney holding a "lien upon or a contract enforceable" under local law against a settlement or a judgment obtained by the attorney would have priority over the federal tax lien "to the extent of his reasonable compensation for obtaining such judgment or procuring such settlement." 26 U.S.C. § 6323(b)(8); see also United States v. Brosseau, 446 F. Supp. 2d 659, 661 (N.D. Tex. 2006).

Federal courts look to local law to determine whether a lien is enforceable under § 6323(b)(8). Ripa, 323 F.3d at 81 n.8. Texas does not, by statute, provide for an automatic lien for attorneys on sums recovered by a client. See Johnson v. Stephens Dev. Corp., 538 F.2d 664, 665 (5th Cir. 1976) ("Assuming that a lien by [the attorney] would give him standing to oppose dismissal, we look to Texas law to see if he has a lien [based on an attorney-client contract]. He does not."); United States v. Grubert, 191 F. Supp. 326, 327–28 (S.D. Tex. 1961); Tex. Mex. Ry. Co. v. Showalter, 3 Willson 92 (Tex. Ct. App. 1886). An attorney in Texas may claim a common-law lien, but only on funds that have come into his possession. Grubert, 191 F. Supp. at 328; Showalter, 3 Willson 92. Here, the funds never came into Salazar's possession, and he does not assert that he had a lien by the authority of any statute or Texas common law. In his appellate brief, he does not cite to any Texas authority that would contradict the finding of the district court that Texas law would not recognize his asserted lien on the settlement amount.

Salazar instead relies exclusively on the notion that he has an "equitable" claim, arising in contract, on the settlement amount. He does not cite any Texas or Fifth Circuit caselaw, or any statutory law, supporting his assertion that such a claim might exist. The single case he cites for the proposition, United States v. Kamieniecki, 261 F. Supp. 683 (D.N.H. 1966), was decided one month after the effective date of § 6323(b)(8) and does not refer to it. See Federal Tax Lien Act of 1966, Pub. L. No. 89-719, §§ 101, 114, 80 Stat. 1125, 1126, 1146 (1966). In

Kamieniecki, the court found that "equitable principles" supported awarding attorney's fees to an attorney who could not satisfy the New Hampshire statute governing attorney's liens because his lien was "inchoate" at the time the federal lien was perfected, since its amount was still unknown. Id. at 690–91. Notably, the attorney had been awarded attorney's fees as a part of the state court judgment he obtained for his client. Id. at 690. The court found that it was clear that the attorney's efforts had led to the creation of the fund in question and that "this [was] one of those very rare cases where equitable considerations compel the awarding of compensation." Id. at 691.

The Kamieniecki court cited a decision of this court, United States v. Hubbell, 323 F.2d 197 (5th Cir. 1963), in its holding. Kamieniecki, 261 F. Supp. at 691. In Hubbell, "attorneys for the government assured the Court that fees earned by appellees' attorneys 'would be taken care of.'" Hubbell, 323 F.2d at 201. The court thus held that the attorneys were entitled to some compensation for their services despite the existence of a federal tax lien on the state court judgment in question and remanded the case "for a determination of the amount of reimbursement equitably due appellees and their attorneys for creating the fund for the benefit of the government." Id. Hubbell predates the enactment of § 6323(b)(8); whether equitable principles might still allow for an attorney to recover despite his failure to satisfy the terms of the statute is now in doubt because the statute itself does not provide for such an exception. See 26 U.S.C. § 6323. In any event, the facts here do not raise the equitable concerns present in either Hubbell or Kamieniecki. Salazar was never promised by the United States or any court that he would recover for his efforts at obtaining the settlement, nor has he submitted any evidence of the extent of those efforts.

Salazar does not point to any evidence of his efforts at procuring this settlement, beyond the affidavit he submitted to the district court. The affidavit details time spent preparing for Betancourt's criminal trial and the civil case

against him, but there is no mention in the affidavit of Salazar having negotiated with Rosales's attorney, prepared the terms of the settlement, or engaged in other activities associated with the settlement reached between Betancourt and Rosales. Salazar's assertion to the district court that all of his claimed attorney's fees stemmed from his efforts to procure the settlement is demonstrably false, based on his own affidavit. Moreover, the record suggests that Salazar never intended for the government to know that Betancourt would receive $150,000 in compensation for consenting to the release of the funds to Rosales. Salazar fought to keep the terms of the agreement secret from both the district court and the IRS. If an equitable justification for granting an attorney's lien superpriority over a federal tax lien still exists in the Fifth Circuit, Salazar's situation would not merit such treatment.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.