STEPHEN A. HIGGINSON, Circuit Judge:
Plaintiff-Appellant Ariana M. challenges Defendant-Appellee Humana Health Plan of Texas’s denial of coverage for continued partial hospitalization. After reviewing the administrative record, the district court granted Defendant’s motion for summary judgment. We AFFIRM.
I.
Plaintiff is a dependent eligible for benefits under the Eyesys Vision Inc. group health plan (the “Plan”), which is insured and administrated by Humana. The Plan’s benefits include coverage for partial hospitalization for mental health treatment. However, benefits are payable only for treatments that are “medically necessary.” “Medically necessary” is defined as
health care services that a health care practitioner exercising prudent clinical judgment would provide to his or her patient for the purpose of preventing, evaluating, diagnosing or treating an illness or bodily injury, or its symptoms. Such health care service must be:
• In accordance with nationally recognized standards of medical practice;
• Clinically appropriate in terms of type, frequency, extent, site and duration, and considered effective for the patient’s illness or bodily injury;
• Not primarily for the convenience of the patient, physician or other health care provider; and
• Not more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of the patient’s sickness or bodily injury.
For the purpose of medically necessary, generally accepted standards of medical practice means standards that are based on credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community, Physician Specialty Society recommendations, the *756 views of physicians practicing in relevant clinical areas and any other relevant factors.
Plaintiff has a long history of mental illness, eating disorders, and engaging in self-harm. On April 15, 2013, Plaintiff was admitted to Avalon Hills’s intensive partial hospitalization program. Partial hospitalization refers to a level of care in which a patient attends medical programming for approximately eight hours per day. This form of care is more intensive than either intensive outpatient or outpatient care.
Defendant initially found the treatment medically necessary and approved partial hospitalization through April 19, 2013, ultimately extending authorization through June 4, 2013, for a total of 49 days. On June 5, 2013, Defendant denied continued partial hospitalization treatment, finding that it was no longer medically necessary. In making its determination, Defendant asked two doctors to review Plaintiffs medical treatment, using the Mihalik criteria, a privately licensed review criteria created by the Mihalik Group.
Plaintiff filed her Complaint on November 7, 2014. On February 12, 2015, Plaintiff filed a motion to determine the standard of review, arguing that Defendant’s denial of benefits should be reviewed de novo. Defendant responded, conceding that de novo review applies to plan term interpretations; however, Defendant also noted that under Fifth Circuit law, even when de novo review applies, factual determinations are reviewed for abuse of discretion. Noting the parties’ agreement, the district court granted Plaintiffs motion. Defendant next filed a motion for summary judgment along with the administrative record. Plaintiff responded. The district court granted the motion for summary judgment. Plaintiff appealed.
II.
Plaintiff argues that the district court erred by applying an abuse of discretion, instead of a de novo, standard to assess Defendant’s factual determinations. We disagree.
The Employee Retirement Income Security Act of 1974’s (“ERISA”) text “does not directly resolve” the question of the appropriate standard of review of an ERISA plan administrator’s decision to deny plan benefits. Conkright v. Frommert, 559 U.S. 506, 512, 130 S.Ct. 1640, 176 L.Ed.2d 469 (2010). In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that “[cjonsistent with established principles of trust law, ... a denial of benefits challenged under [ERISA] is to be reviewed under a de novo standard unless the benefit plan gives the administrator ... discretionary authority to determine eligibility for benefits or to construe the terms of the plan.” Id. at 115, 109 S.Ct. 948. Accordingly, where an ERISA plan delegates discretionary authority to the plan administrator (a “discretionary clause”) courts review the plan administrator’s decisions for abuse of discretion. See, e.g., Barhan v. Ry-Ron Inc., 121 F.3d 198, 201 (5th Cir. 1997).
In Pierre v. Connecticut General Life Insurance Co./Life Insurance Co. of North America, 932 F.2d 1552 (5th Cir. 1991), we interpreted Firestone to “not require de novo review for factual determinations” and instead found that “an abuse of discretion standard of review is appropriate” for reviewing a plan administrator’s factual determinations. Id. at 1553. Accordingly, in this Circuit, “with or without a discretionary] clause, a district court rejects an administrator’s factual determinations in the course of a benefits review only upon the showing of an abuse of discretion.” Dutka ex rel. Estate of T.M. v. AIG Life Ins. Co., 573 F.3d 210, 212 (5th *757 Cir. 2009); see also Green v. Life Ins. Co. of N. Am., 754 F.3d 324, 329 (5th Cir. 2014) (quoting Dutka and noting that the standard of review for factual determinations is abuse of discretion regardless of the presence of a discretionary clause).
Plaintiff argues that Pierre deference does not apply here because Texas’s anti-discretionary clause law mandates de novo review. Texas Insurance Code Section 1701.062(a) provides that “[a]n insurer may not use a document described by Section 1701.002 [among other things, policies for health and medical insurance] in this state if the document contains a discretionary clause.” Tex. Ins. Code § 1701.062(a). Under the statute, discretionary clauses include any provision that “purports or acts to bind the claimant to, or grant deference in subsequent proceedings to, adverse eligibility or claim decisions or policy interpretations by the insurer” or “specifies ... a standard of review in any appeal process that gives deference to the original claim decision or provides standards of interpretation or review that are inconsistent with the laws of this state, including the common law.” Tex. Ins. Code § 1701.062(b)(1), (2)(D).[1]
Plaintiff argues that these provisions, taken together, required the district court to review Humana’s factual findings de novo. We disagree. The plain text of the statute provides only that a discretionary clause cannot be written into an insurance policy; it does not mandate a standard of review. As always, statutory interpretation begins “with the plain language and structure of the statute.” Coserv Ltd. Liab. Corp. v. Sw. Bell Tel. Co., 350 F.3d 482, 486 (5th Cir. 2003). Texas’s anti-discretionary clause law, by its terms, does not mandate a standard of review. Instead, it provides only that an insurer “may not use a document ... if the document contains a discretionary clause.” Tex. Ins. Code § 1701.062(a). That is, Texas’s anti-discretionary clause law concerns what language can and cannot be put into an insurance contract in Texas. It does not mandate a specific standard of review for insurance claims. See Am. Council of Life Insurers v. Ross, 558 F.3d 600, 609 (6th Cir. 2009) (“[It is not] necessarily the case ... that, if Michigan can remove discretionary clauses, it will be allowed to dictate the standard of review for all ERISA benefits claims. All that today’s case does is allow a State to remove a potential conflict of interest.”); Curtis v. Metro. Life Ins. Co., No. 15-CV-2328, 2016 WL 2346739, at *10 (N.D. Tex. May 4, 2016) (applying Texas’s anti-discretionary clause law, but finding that factual findings should be reviewed for abuse of discretion); Garza v. United Healthcare Ins. Co., No. 16-CV-0853, ECF No. 30 (S.D. Tex. Jan 31, 2017) (same); Unum Life Ins. Co. of Am., v. Mohedano, No. 13-CV-446, 2017 WL 713791, at *5 n.7 (S.D. Tex. Feb. 23, 2017) (“District courts continue to follow [Pierre’s] mandate regarding factual determinations even where the discretionary clause is void.”).
Accordingly, we find that Texas’s anti-discretionary clause law does not change this court’s normal Pierre deference.[2]
*758 III.
Plaintiff next argues that the district court erred in granting Defendant summary judgment even if an abuse of discretion standard applies. Plaintiff raises two issues. First, she argues that Defendant erred by using the Mihalik criteria, instead of the raw Plan terms or the American Psychiatric Association’s Practice Guidelines, to assess medical necessity. Second, she argues that under any criterion, her continued partial hospitalization was medically necessary. We disagree.
“Standard summary judgment rules control in ERISA cases.” Cooper v. Hewlett-Packard Co., 592 F.3d 645, 651 (5th Cir. 2009) (quoting Vercher v. Alexander & Alexander Inc., 379 F.3d 222, 225 (5th Cir. 2004)). “We review a ‘district court’s grant of summary judgment de novo, applying the same standards as the district court.’ ” Green, 754 F.3d at 329 (quoting Cooper, 592 F.3d at 651). “Summary judgment is appropriate when ‘there is no genuine dispute as to any material fact and the movant is entitled to judgment as, a matter of law.’ ” Id. (quoting Fed. R. Civ. P. 56(a)). “This court reviews de novo the district court’s conclusion that an ERISA plan administrator did not abuse its discretion in denying benefits. ...” Anderson v. Cytec Indus., Inc., 619 F.3d 505, 511 (5th Cir. 2010). “A plan administrator abuses its discretion if it acts ‘arbitrarily or capriciously.’ ” Truitt v. Unum Life Ins. Co. of Am., 729 F.3d 497, 508 (5th Cir. 2013) (quoting Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc., 168 F.3d 211, 214 (5th Cir. 1999)). “A decision is arbitrary and capricious only if it is ‘made without a rational connection between the known facts and the decision or between the found facts and the decision.’ ” Id. (quoting Meditrust, 168 F.3d at 215).[3] “In addition to not being arbitrary and capricious, the plan administrator’s decision to deny benefits must be supported by substantial evidence.” Anderson, 619 F.3d at 512. “Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” Corry v. Liberty Life Assurance Co. of Bos., 499 F.3d 389, 398 (5th Cir. 2007) (quoting Ellis v. Liberty Life Assurance Co. of Bos., 394 F.3d 262, 273 (5th Cir. 2004)).
A.
Plaintiff contends that the plan administrator should not have used the Mihalik criteria to determine medical necessity because the criteria were not mentioned in the Plan’s definition of medical necessity. Plaintiff further contends that the Mihalik criteria are inconsistent with the Plan’s terms because they are not consistent with “nationally recognized standards of medical practice.” We disagree.
First, the fact that the Plan does not expressly incorporate the Mihalik criteria does not indicate that their use in the claims adjudication procedure was improper. Instead, the Mihalik criteria simply provide Defendant’s claims adjudicators guidance in carrying out the terms of the Plan. Importantly, nothing in the Mihalik criteria’s definition of medical necessity is inconsistent with the Plan’s terms as the following table indicates:
*759 [[Image here]]
What the Mihalik criteria add to the Plan definition is additional guidance for determining medical necessity in specific sitúa-tions. But even these additions map onto the Plan definition of medical necessity:
*760 [[Image here]]
The Mihalik criteria further list a number of specific treatment initiation and treatment continuation criteria, all of which fit comfortably within the Plan’s definition of medically necessary. For example, the Mihalik criteria instruct a physician reviewing a request for mental health treatment to consider, among other things, “[w]ith treatment at this level, the individual is capable of controlling behaviors and/or seeking professional help when not in a structured treatment setting[],” and “[i]f the services being proposed have been attempted previously without significant therapeutic benefit, there is a clinically credible rationale for why those same services could be effective now.” These questions simply add context to the Plan’s definition of medically necessary.
Importantly, “an insurer’s reliance on a pre-published plan to determine what is ‘medically necessary’ can be reasonable under ERISA.” Quality Infusion Care Inc. v. Aetna Life Ins. Co., 257 Fed.Appx. 785, 736 (5th Cir. 2007) (unpublished) (citing Dowden v. Blue Cross & Blue Shield of Tex., Inc., 126 F.3d 641, 644 (5th Cir. 1997)). And this practice appears to be commonplace. See, e.g., Love v. Dell, Inc., 551 F.3d 333, 337 (5th Cir. 2008) (“As was ValueOptions’ policy, its reviewers employed the American Society of Addiction Medicine, Inc. Patient Placement Criteria for the Treatment of Substance Related Disorders, Second Edition Revised, in evaluating Love’s claims.”); Dowden, 126 F.3d at 644 (“Relying upon learned publications, Dr. Benjamin V. Carnovale, along *761 •with other medical and legal staff developed a written policy for the uniform processing of the claims of silicone breast implant patients. Consistent with the insurance contract, the policy also enumerates which procedures are medically necessary.”).
Put another way, we hold that an insurer is permitted to rely on medical review criteria to make coverage decisions so long as those criteria are not inconsistent with the plan’s terms.
Second, Plaintiff is incorrect that the Mihalik criteria do not represent nationally recognized standards of medical practice. Instead, the record indicates that the Mi-halik criteria are intended to represent nationally recognized standards of medical practice, were created in consultation with a group of doctors and health professionals from across the country, and were based on extensive medical literature. Plaintiff does not point to any record evidence indicating that the Mihalik criteria do not represent a nationally recognized standard of medical practice. Plaintiff additionally argues that Defendant should have used the guidelines created by the American Psychiatric Association. But Plaintiff does not contend that the Plan documents or ERISA require the use of any particular representation of the national standard of care. Accordingly, because the record supports finding that the Mihalik criteria are in line with national standards, the district court did not err in finding that Defendant’s consideration of the Mihalik criteria was proper.
B.
The parties next dispute whether Plaintiffs continued partial hospitalization was medically necessary. The question of whether a proposed treatment is medically necessary is a factual determination and therefore reviewed for abuse of discretion. Meditrust Fin. Servs., 168 F.3d at 214 (“The Plan persuasively argues that the decision to deny benefits based on lack of medical necessity involves a review of the facts in Revels’s hospital records and a determination of whether there is factual support for her claim.... [Tjhese medical assessments do not constitute an issue of contract interpretation. Deciding the medical progress of a patient through analysis of medical reports and records is similar to the factual determinations we have reviewed for abuse of discretion in other ERISA cases. Therefore, we affirm the district court’s conclusion that it should review the Plan’s decision for abuse of discretion because the Plan made a factual determination.” (footnote omitted)).
Plaintiff contends that the district court erred in finding that Defendant’s medical necessity determination was not an abuse of discretion because “[t]he treatment records clearly demonstrated that Ariana’s PHP treatment at Avalon Hills was medically necessary because she exhibited self-harm as well as urges to engage in risky behavior severely detrimental to her health.” We disagree.
Two medical reviewers considered Plaintiffs claim and concluded that continued partial hospitalization was not medically necessary. The two reviewing doctors agreed that Plaintiff was not an imminent danger to herself or others and that Plaintiff was medically stable. Doctor Prabhu further stated that Plaintiff could have received effective outpatient (as opposed to partial hospitalization) care. These conclusions were supported by substantial record evidence. Both doctors spoke directly with Plaintiffs treating physicians and reviewed relevant medical literature before making their coverage decisions.
Plaintiff disputes the reviewing doctor’s conclusions, pointing to record evidence that she was “really not progressing very well,” was “at [a] high risk of relapse,” and *762 was likely to continue restricting (not eating enough food) and over-exercising. However, the reviewing doctors were aware of this information. Indeed, the continued medical risks Plaintiff faced were extensively documented in Doctor Pra-bhu’s report. Nonetheless, the reviewing doctors found that an outpatient course of treatment was the most cost-effective way to mitigate Plaintiffs medical risk. Specifically, Doctor Prabhu found that Plaintiff could “be safely treated in a less restrictive setting.”
By the time that Plaintiff was denied continued coverage, the reviewing doctors found that her condition had stabilized. Indeed, both reviewing doctors noted that Plaintiff had improved enough during her course of treatment to no longer be an imminent danger to herself or others. Doctor Prabhu noted that Plaintiff had “made progress about her self harm (still has the thoughts and urges but doesn’t anymore).” Doctor Hartman agreed, noting that “[t]he patient denies suicidal ideation/homicidal ideation (SI/HI) or psychosis.” During her time at Avalon, Plaintiff also reached a healthy weight. Based on this improvement, Doctor Prabhu concluded that Plaintiff “appear[ed] to be at her baseline behaviors.” Additionally, both doctors agreed that Plaintiffs progress in partial hospitalization treatment- had stalled because Plaintiff was not invested in her course of treatment.
Moreover, that Plaintiffs doctors disagreed with Defendant’s assessment of the proper level of care for Plaintiffs condition does not create a genuine issue of material fact. See, e.g., Anderson, 619 F.3d at 517 (“[ERISA plan administrator] was not obliged to accept the opinions of [plaintffs] treating physicians.”); Medi-trust Fin. Servs., 168 F.3d at 215 n.7 (upholding denial of benefits despite disagreement between reviewing doctors and treating physicians). Indeed, our law is clear that “an administrator does not abuse its discretion by relying on the medical opinions of its consulting physicians instead of the medical opinions of a claimant’s treating physicians.” Corry, 499 F.3d at 402 (5th Cir. 2007).
It was not unreasonable on this record to conclude that Plaintiff could be treated with a less costly, equally effective outpatient treatment. Because the plan’s definition of medical necessity requires that the treatment not be “more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of the patients sickness or bodily injury!,]” substantial evidence supports Defendant’s finding that further treatment at Avalon Hills was not medically necessary.
IV.
We have considered Plaintiffs remaining arguments and find them without merit. The district court’s order granting Defendant summary judgment is AFFIRMED.

. Texas has also adopted administrative rules that are substantively identical to the Insurance Code. See 28 Tex. Admin. Code §§ 3.1201-3.1203.

. Plaintiff argues that the court should reexamine Pierre. Nonetheless, Plaintiff concedes that "one panel of this Court cannot overrule another, and that the ultimate resolution of the issue in this Court would likely require en banc consideration.” Plaintiff is not alone in her criticism of Pierre; indeed, Pierre has been rejected by most other Circuit Courts. Moreover, Pierre is likely to become more important as more states adopt anti-discretionary clause statutes. Under Firestone, courts defer to discretionary clauses in plan documents. Until states began banning discretionary clauses, Pierre's impact was limited because this court was likely to defer to a plan admin *758 istrator's factual determination under the terms of the plan — not under Pierre.

. This court also considers a plan administrator's conflict of interest in assessing whether the plan administrator abused its discretion. Truitt, 729 F.3d at 508. Plaintiff made a conflict of interest argument below, but no longer presses the argument on appeal.